PETERSON, *by next friend*, v. SMART, *Appellant.*

1. **Landlord and Tenant**: LANDLORD, NOT LIABLE TO REBUILD FENCE, WHEN.: DAMAGES. Where there was no agreement by the landlord to keep the premises in repair or fit for occupation, and where, before the tenancy began, the landlord had removed the fence from the front of the lot which had a perpendicular descent of seven or eight feet to the sidewalk, *Held*, that he was under no duty to the tenant to rebuild the fence, and, *a fortiori*, under none to a sub-tenant who became such without his knowledge or consent, and that he was not liable to a five or six year old child of such sub-tenant in an action for damages for injuries sustained by its fall from the lot to the sidewalk.

2. ———: LANDLORD NOT LIABLE TO REBUILD FENCE BECAUSE OF HIS TRESPASS IN REMOVING SAME DURING A PRIOR TENANCY. Although the landlord might have been guilty of trespass in removing the fence during a prior tenancy, during which the child's father was in possession of a portion of the premises as a sub-lessee, yet when the prior tenancy ceased and the father sub-let from the new tenant, *Held*, that it was as though the father had then, for the first time, occupied the premises, and that the landlord owed no duty to the new tenant, nor to such sub-tenant, nor to any one else upon the premises by the invitation or permission of either, to rebuild such fence.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

REVERSED.

*J. K. Sheeley* and *J. Brumback* for appellant.

Appellant was not liable to his tenants, or to any one

coming in under them, for the condition of the premises, or for their being tenantable or safe for use for the purpose for which they were apparently intended or leased. *Davis v. Smith,* 15 Mo. 468; *Vai v. Weld,* 17 Mo. 232; *Morse v. Maddox,* 17 Mo. 573; Taylor Land. & Ten. (4 Ed.) § 327; *Cleves v. Willoughby,* 7 Hill (N. Y.) 83.

2.   There was no duty on appellant to repair or improve the premises to prevent or protect respondent from falling into the street.   *Jaffe v. Harteau,* 56 N. Y. 398; *Burdick v. Cheadle,* 26 Ohio St. 393; *Flynn v. Hatton,* 4 Daly 552; Wharton's Law of Neg., (1 Ed.) § 421; *O'Brien v. Capwell,* 59 Barb. 497; *Gott v. Gaudy,* 2 Ellis & Black. 847; 22 Eng. L. & Eq. 173; *Straub v. Soderer,* 53 Mo. 38; Bigelow's Lead. Cas. Law of Torts, 654.

3.   Respondent was on the property in Spenser's term and before the fence was removed, but all rights, duties and liabilities existing in and arising out of relations during that term, ended with it, as between the parties hereto, unless a cause of action had accrued to respondent before such termination, which was not the case.

*Thomson & Kagy* for respondent.

1.   It is conceded that in the absence of any agreement to that effect, there is, as between him and the tenant, no obligation on the part of the landlord to repair.   But we are unable to discover that this doctrine of repairs has any application to the case.   The fence did not fall to pieces by decay, nor was it removed or destroyed by any of the forces of nature, or by the act of the tenant or a stranger.   Smart removed it himself, uncovering and exposing a dangerous excavation upon the premises; and his liability does not, as we conceive, rest upon any obligation to repair, but upon a duty which the law imposed upon him, after having produced the danger, to do what was reasonably necessary to prevent injury from it.   *In re Williams v Groucott,* 4 Best & Smith 149; *Ancaster v. Mill-*

*ing,* 2 Dowl. & Ry. 714; 2 Hilliard on Torts, (3 Ed.) 586.

2. The courts have held parties liable for the results of such negligence as this, not only when the injuries were not and could not have been anticipated, but even where the parties injured were trespassers. *Railroad Co. v. Stout,* 17 Wall. 657; *Birge v. Gardiner,* 19 Conn. 507; *Lynch v. Nurdin,* 1 Ad. & El. (N. S.) 28; *Walsh v. Miss. Transportation Co.,* 52 Mo. 434; *Brown v. H. & St. Jo. R. R. Co.,* 50 Mo. 461.

HENRY, J.—The defendant was the owner of a tenement house on McGee street, in Kansas City, and in the spring of 1871, leased it by the month to one Spenser, who, without the knowledge or consent of Smart, sub-let one room of the house to plaintiff's father. At the time there was a picket fence on the line of the lot fronting the street, which was removed by defendant while Spenser and plaintiff's father occupied the house. On that side of the lot there was a perpendicular descent of seven or eight feet from the lot to the sidewalk. There was evidence strongly tending to prove that in the spring of 1871 the fence was removed, and that after its removal Spenser quit the premises, which were, thereupon, leased by the defendant to one Larson, who, without the knowledge or consent of defendant, sublet one room of the house to Peterson, the father of the plaintiff. Defendant did not agree with Larson that he would make any repairs, but it was a verbal understanding between Larson and defendant that Larson might make any needed repairs, and that defendant would deduct the cost of such repairs from the rent. In October, 1871, some time after Larson went into possession of the premises, the plaintiff, then a child five or six years of age, with other children, was playing on that side of the lot from which the fence had been taken, and fell from the lot to the sidewalk, receiving severe injuries from the fall. For those injuries he sued defendant for damages, and in the Kansas City court of common pleas obtained judg-

ment for $1,937, from which defendant has prosecuted this appeal

If replacing the fence were embraced in the agreement between Larson and Smart, as to repairs which Larson

**1. LANDLORD AND TENANT: landlord not liable to rebuild fence, when: damages.** might make, then the failure to replace it was the neglect of Larson, if neglect be imputable to any one, and not to Smart. If it was not embraced in that agreement, then Smart was under no obligation to Larson, direct or indirect, to rebuild the fence, and if not to Larson, neither to his sub-tenant, betwixt whom and Smart there was no privity whatever. Peterson was a stranger on the premises, as to Smart, and was there, not on his invitation or by his permission, but on the invitation and by the permission of Larson. If Larson, knowing that the fence was down, went into possession under an agreement in which there was no obligation of Smart to repair the premises, and one of his children had fallen over the precipice, he, according to highly respectable authorities, would have had no action against Smart. In *Jaffe v. Harteau*, 56 N. Y. 398, it was held that " a lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to lessee or others lawfully upon the premises, for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended." In *O'Brien v. Capwell*, 59 Barb 497, the plaintiff sued for damages sustained by a fall from a piazza extending across the rear of a dwelling house owned by defendant and occupied at the time by a tenant under a written lease for a year. The plaintiff was not the tenant, but a washer-woman in the tenant's employment. The court decided that she was not entitled to recover, and said: " But assuming, as I think we should on this point, that she was a servant of the tenant, and stood in his place, the question is then narrowed to the simple inquiry whether there existed any duty on the part of defendant to his tenant, which would have entitled him to maintain this action if he had suffered the

injury instead of his servant," and then proceeded to decide that defendant being under no obligation to repair the premises, and their condition being known to the tenant, the landlord would not be liable to an action for negligence by the tenant, or his servant, or any one standing in his place, arising out of the fact that the premises were out of repair. See also *Burdick v. Cheadle,* 26 Ohio St. 398. Smart owed no duty to Peterson, other than those he was under to Larson, and conceding that his obligation to each was the same, the case is as strongly put for the plaintiff as he could ask, and, under the authorities, it is clear that Larson, for a similar injury to one of his own children, could not have maintained an action against Smart. It is well settled that in a lease of real estate there is no implied covenant that the landlord will keep the premises in repair or fit for occupation. *Cleves v. Willoughby,* 7 Hill 83; *Levitt v. Fletcher,* 10 Allen 120.

It is contended that defendant committed a trespass in removing the fence, and that he had "no more right to remove the fence than if the premises belonged to another." This might be conceded so far as concerns the lessee in possession at the time, but a subsequent tenant of Smart could not complain of a trespass committed by Smart against a prior tenant. The evidence tended to prove that the fence was removed while Spenser occupied the premises; and, although plaintiff's father occupied one room under Spenser at the time the fence was taken away, yet, when Spenser's lease terminated and he quit the premises, which were then leased to Larson, there was a severance of all relations between Smart and Spenser, and Smart and all persons there by invitation or permission of Spenser, and when Peterson again went in under Larson, it was, so far as this case is concerned, as if he had then, for the first time, occupied a portion of the premises. The fact that he had before occupied under Spenser, is, therefore, of no consequence whatever in the consideration of Smart's lia-

*2. ——: landlord not liable to rebuild fence because of his trespass in removing same during a prior tenancy.*

bility in this action. The foregoing view of the case was ignored by the court in its refusal of instructions asked by defendant, and in giving for plaintiff instructions which authorized the jury to find for him, notwithstanding they might believe from the evidence that the fence was taken away while Spenser occupied the premises. The judgment is, therefore, reversed and the cause remanded. All concur.