29  385
63  524

HENRY KRUEGER *vs.* MARTIN FERRANT.

August 18, 1882.

Lease—No Implied Covenants to Repair.—Where a lease contains no stipulation or covenant on the subject, no obligation on the part of the landlord to repair is implied, nor any warranty that the premises are or will continue to be suitable for the lessee's use or business, or safe from exposure to damage from the elements through the landlord's omission to make repairs. *Wilkinson* v. *Clauson, ante,* p. 91, followed.

Same—Lease of Portion of Building—Repair of Common Roof.— This rule *held* also to extend in like manner to parts of the premises not expressly demised to the tenant, but which may be necessary for his convenience or protection; as, in this case, the common roof. The rule as respects the liability of the proprietors of distinct adjoining tenements, under a common roof, to each other for repairs, is the same whether one tenement is by the side of or under the other.

v.29—25

**Same—Damages from Defective Roof to Lessee of Ground Floor.—** Accordingly, where a tenant leased and occupied a separate room in the lower story of a building, the roof of which had become defective from want of repairs, and in consequence his stock of goods was damaged by water during a rain storm, *held*, that the landlord was not liable for such damage, either upon implied covenant, or upon the principle that he, as the owner of the upper portion of the building, was bound so to use his own property as not to injure the occupant of the lower story.

Appeal by defendant from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial, after a verdict for plaintiff. The case is stated in the opinion.

*Baxter, Grethen & Penney*, for appellant.

*Benton, Benton & Roberts*, for respondent, cited *Marshall* v. *Cohen*, 44 Ga. 489; *Glickauf* v. *Maurer*, 75 Ill. 289; *Kirby* v. *Boylston Market Ass'n*, 14 Gray, 249; *Shipley* v. *Fifty Associates*, 101 Mass. 251; *Same* v. *Same*, 106 Mass. 194; *Priest* v. *Nichols*, 116 Mass. 401; *Readman* v. *Conway*, 126 Mass. 374; *Toole* v. *Beckett*, 67 Me. 544; *Scott* v. *Simons*, 54 N. H. 426.

VANDERBURGH, J. The plaintiff leased and occupied the lower story of defendant's building, in the city of Minneapolis. Separate rooms in the second story were occupied by other tenants. It does not appear that any of the tenants had control of the roof, or were charged with the duty of repairing it, or that there was any covenant or agreement to repair by either party to any of the leases under which the several tenements in the building were occupied. The roof having become defective and out of repair, water had at divers times during rain storms leaked through into plaintiff's store, and caused some damage. Defendant had due notice of this, as well as of the condition of the roof, but he had neglected to make any repairs. Finally, at the time complained of, as the result of a severe storm, a large quantity of water leaking through the roof passed through the ceiling of plaintiff's store, greatly damaging his stock of goods, consisting of guns, ammunition, etc. The plaintiff alleged in his complaint a promise and undertaking by defendant, in the contract of lease, to keep the roof in repair, but the issue as to any express agreement so to do was excluded from the jury by the court for insufficiency

of proof. But, independently of any express contract or agreement to repair, the court instructed the jury that the landlord was bound to so care for the roof, which was under his own charge, that his tenant should not be injured by his neglect. "In other words, the defendant was bound to take such care in respect to this roof, and the keeping of it in repair, as to protect the store below from any danger of being drenched by water, as a prudent man of ordinary intelligence would do if the property were all his own." The defendant's exceptions to these instructions present the only question demanding our consideration.

1. Where several apartments are leased, as in this instance, by the owner of the premises to different tenants under a common roof, doubtless, in the absence of a stipulation to the contrary, those parts of the premises, including the roof, not expressly included in the leases, will be deemed to remain in the possession and control of the landlord. *Stockwell* v. *Hunter*, 11 Met. 448, 455, *et seq.* And tenements under a common roof may be as essentially distinct when one is under the other, as when one is by the side of the other. *Proprietors, etc.,* v. *Lowell*, 1 Met. 538; *Cheeseborough* v. *Green*, 10 Conn. 318. The court rightly instructed the jury in this case that the roof of the demised premises was "in the charge of the landlord."

2. The rule appears to be well established that there is no implied covenant on the part of the landlord to make repairs, or that the premises are or will prove to be suitable for the tenant's use or business. *Foster* v. *Peyser*, 9 Cush. 242; *Witty* v. *Mathews*, 52 N. Y. 512; *Howard* v. *Doolittle*, 3 Duer, 464; *Wilkinson* v. *Clauson*, *ante*, p. 91. There seems to be no sound reason why this rule should not extend in like manner to portions of the premises not expressly demised to the tenant, but which are necessary for his use or protection; as, in this case, the common roof. *Pomfret* v. *Ricroft*, 1 Saund. 321, (note by Sergt. Williams;) *Chauntler* v. *Robinson*, 4 Exch. 163; *Doupe* v. *Genin*, 45 N. Y. 119; *Brewster* v. *De Fremery*, 33 Cal. 341; *Walker* v. *Gilbert*, 2 Robt. 214; Taylor on Landlord & Tenant, (7th Ed.) §§ 175*a*, 328. The authorities generally agree that the parcel tenant or owner may, in such case, have an easement of ingress and egress over the common passage-ways, and of shelter in the roof. But this does not

throw upon the landlord the burden of actively undertaking to keep the building or any part of it in repair, unless he has agreed to do so, or unless it is in danger of becoming a nuisance. In *Chauntler* v. *Robinson, supra,* the court decide that the only obligation cast upon the owner is to prevent its becoming a nuisance.

The tenant is the party most interested in understanding the risks which he will assume in exposing his goods to injury from the elements. It is incumbent on him to exercise proper care and precaution in the selection and leasing of tenements to be occupied by him. It is his right, and ordinarily his duty, to insist that he be permitted to inspect those portions of the premises which may be important to him, and to require the proper stipulations in the contract for his protection. Taylor on Landlord & Tenant, (7th Ed.) § 175a; *Carstairs* v. *Taylor,* L. R. 6 Exch. 217; *Keates* v. *Earl of Cadogan,* 10 C. B. 591, 601. Since, then, defendant is not liable to plaintiff upon contract, express or implied, his liability, if any, must arise from the fact of his ownership and control of the upper story of the building.

3. This brings us to the consideration of the ground upon which the court, at the trial, substantially placed the defendant's liability in this case, and that is the application to the owner or occupant of the upper story of the maxim *sic utere tuo ut alienum non lædas.* In the application of this principle it is deemed immaterial whether the relation of the occupant of the lower story to the owner of the upper story and roof be that of tenant or distinct owner. 2 Wait's Actions & Def. 745. This maxim restrains a man from using his own property to the prejudice of his neighbor, but is not usually applicable to a mere omission to act, but rather to some affirmative act or course of conduct which amounts to or results in an invasion of another's rights. Exceptional cases need not be discussed here. *Pomfret* v. *Ricroft,* (note,)*supra ;* Broom, Leg. Max. 366. In *Cheeseborough* v. *Green, supra,* the court, while admitting that an action on the case might lie against any one who should suffer his building to become dangerous through decay, deny that the maxim could be carried further in its application, so as to render the owner of the upper story liable to the owner of the lower for want of proper repairs to the roof. See, also, *Pierce* v. *Dyer,* 109 Mass. 374; *Colebeck* v. *Girdlers Co.,* L. R. 1 Q. B. Div. (1875,) 234.

*Walker* v. *Gilbert,* 2 Robt. 214, and *Doupe* v. *Genin,* 45 N. Y. 119, are cases similar to the one at bar. In the latter case (page 124) the court very clearly states and distinguishes the rule of liability applicable to this case : "A man has no right to so construct his building or allow it to be in such a condition as to cause the water which falls upon it to flow upon his neighbor's premises. He is bound to protect his neighbor against injury caused by his own structures." But, in the absence of contract, he is not bound to replace or repair structures which have fallen into decay, merely for the purpose of protecting his neighbor's property, simply because such structures previously afforded such protection.

The case of *Toole* v. *Beckett,* 67 Me. 544, maintains a contrary doctrine. The court rests its opinion upon the authority of *Kirby* v. *Boylston Market Ass'n,* 14 Gray, 249; *Gray* v. *Boston Gas-light Co.,* 114 Mass. 149; *Norcross* v. *Thom,* 51 Me. 503; and *Priest* v. *Nichols,* 116 Mass. 401. With due respect, we think these cases are readily distinguishable, and cannot be invoked to support the conclusion arrived at by the court in *Toole* v. *Beckett.* In *Kirby* v. *Boylston Market Ass'n* the defendant's structure caused snow and ice to accumulate upon the sidewalk so as to render it unsafe for travel. In *Gray* v. *Boston Gas-light Co.,* the defendant's chimney fell into the street and injured the property of a stranger. *Norcross* v. *Thom* was also an action on the case for maintaining a nuisance.

In *Priest* v. *Nichols,* the goods of a tenant were damaged by water escaping from a waste-pipe to an engine used by the defendant in an upper story. It is very clear that this was not a case of mere omission to repair, and that the landlord, having undertaken to use machinery in the building, would be bound to exercise due care in its management to prevent injury to others. It is suggested in several cases that the tenant of the lower story may himself enter and make repairs. *Pomfret* v. *Ricroft* and *Colebeck* v. *Girdlers Co. supra.* And in *Cheeseborough* v. *Green* the court thought he might have a remedy in chancery. But we deem it unnecessary to consider the question. If, then, the defendant's liability rests solely upon his neglect to repair the roof, we are satisfied that, in the absence of any express

agreement on his part to make repairs, the plaintiff's claim in this action cannot be sustained upon either ground we have considered, without a departure from established principles.

Order reversed, and new trial granted.