G. W. WARD ET AL., Respondents, v. A. W. FAGAN, Appellant.

St. Louis Court of Appeals, November 22, 1887.

1. LANDLORD AND TENANT—IMPLIED AGREEMENTS—REPAIRS.—A renting does not imply an agreement that the premises let are fit for occupancy, nor is a landlord under any implied obligation to the tenant to repair the premises.

2. ———— As to third persons, the landlord is responsible for injuries caused by the bad condition of such parts of the premises as are in his possession.

3. ———— Where a part of a tenement-house is let, the main wall remaining in the exclusive possession of the landlord, the tenant, as to this wall, occupies the position of a stranger to the landlord, and may recover from him damages for injuries to his property caused by the falling of the wall through the landlord's negligence.

4. ———— LEWIS, P. J., holds that, while the rule is correctly stated, its application to the facts is erroneous, and that the decision is opposed to a decision of the Supreme Court.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Certified to the Supreme Court.*

FORD & PAYNE, for the appellant: As between landlord and tenant, there is no implied obligation on the part of the landlord that the property is in a safe condition. 1 Taylor's Landlord & Tenant [8 Ed.] sect. 382 ; Moak's Underhill on Torts, 248, and cases cited. *Vai v. Weld,* 17 Mo. 232 ; *Peterson v. Smart,* 70 Mo. 34, 38 ; *Rogan v. Dockery,* 23 Mo. App. 313 ; 1 Thompson on Negligence, p. 323, sect. 3 ; *Davis, Adm'r, v. Smith,* 15 Mo. 467. If the premises are in good order when demised, but afterwards become dangerous, a lessee out of possession, who has sublet to another in possession, is not liable for injury to the subtenant's property, resulting from a neglect to keep them in repair, even though such lessee covenanted with his landlord to make all ordinary repairs. Moak's Underhill on Torts, 256, and cases cited. No action in favor of a tenant can arise from a *non-feasance* of his landlord in relation to the property demised, unless such landlord has expressly covenanted with the tenant against such *non-feasance.* 1 Taylor's Landlord and Tenant [8 Ed.] sects. 175a, 329, and cases cited ; *Morse v. Maddox,* 17 Mo. 569 ; *Rogan v. Dockery,* 23 Mo. App. 313 ; *Quay v. Lucas,* 25 Mo. App. 4 ; *Krueger v. Ferrant,* 29 Minn. 385 ; 1 Thompson on Negligence, p. 323, sect. 4. The relation of a lessee to his subtenant is a purely contractual one, regarding the premises sublet ; and any action by the subtenant against such lessee, except for a positive *misfeasance* by such lessee, must be founded on an express covenant. Wood's Landlord and Tenant, sect. 330, p. 545 ; *Davis' Adm'r v. Smith,* 15 Mo. 467 ; *Gibson v. Perry,* 29 Mo. 245. There was no evidence tending to show that the defendant knew the premises were in an unsafe condition in time to protect the same, and hence the court erred in giving the third instruction. *Griffith v. Lewis,* 17 Mo. App. 605, 611. The serving of the notice on Kernan & Faris was not notice to the defendant, nor was a copy of said notice competent evidence of its contents. *Griffith v. Lewis,* 17 Mo. App. 605, 609.

J. L. HORNSBY and JOHN W. RIDDLE, for the respondents : Where a portion of a building is let to a tenant, all those portions of the building that are not expressly let, such as common passage-ways, staircases, roofs, and outside walls, are under the control of the landlord, and he is bound to keep the same in repair; as to such portion he still retains the responsibility of general owner to all persons, including the tenant of his building. *Looney v. McLean*, 129 Mass. 33 ; *Stockwell v. Hunter*, 11 Met. 448 ; *Pevey v. Skinner*, 116 Mass. 129 ; Taylor on Landlord and Tenant, sect. 175*a*, note 4. Where a landlord retains possession of part of a building, he is bound to keep the part retained by him in proper repair and condition, so that the tenant will not, through the landlord's fault or negligence, be damaged or injured, either in his person or goods. Wood on Landlord and Tenant, sects. 383-384 ; *Toole v. Beckett*, 67 Me. 544 ; *Looney v. McLean*, 129 Mass. 33. In all such cases, the landlord's liability grows out of the fact that he impliedly covenants not to do any act that will render the demised premises untenable, and to so exercise his control over the parts of the premises retained by him as to inflict no injury upon his tenants. Wood on Landlord and Tenant, sect. 384 ; *Toole v. Beckett*, 67 Me. 544.

ROMBAUER, J., delivered the opinion of the court.

The defendant was the lessee of a certain building, and sublet one room therein to the plaintiffs, who, at the date of the grievance hereinafter stated, occupied it as a sample-room for their wares. This room was separated by a hall, or passage-way, from the western main wall of the building. In June, 1886, this main wall fell, owing to an excavation made in its vicinity by an adjoining proprietor, and by its fall caused damages to the plaintiffs' wares and property within the room leased by them. The plaintiffs thereupon brought the present action against the defendant, before a justice of the peace, and, upon its retrial in the circuit court, recovered a

judgment which is fully justified in amount if otherwise correct. The defendant appeals.

It may be conceded at the outset that if the plaintiffs' action was based on any contract obligation on the part of the defendant, the recovery could not be upheld, as, between landlord and tenant, there is no implied obligation, on the part of the landlord, that the property let is in a safe condition when let, or that it will be kept by the landlord's repairs in a safe condition during the term of tenancy. *Peterson v. Smart*, 70 Mo. 38 ; *Rogan v. Dockery*, 23 Mo. App. 313 ; *Joyce v. DeGiverville*, 2 Mo. App. 596. The plaintiffs do not deny this proposition, but claim that the law has no application to a case like the one at bar, where the tenant is a lessee of only part of the premises, and where the injury complained of was owing to the defective condition, or non-repair of other parts of the structure, of which they had no possession or control, but which were in the exclusive possession of the landlord. This distinction is recognized in Massachusetts and Maine, and the tenant in the former state was permitted to recover for injuries sustained by the defect' of a stairway used by him in common with the landlord and other tenants (*Looney v. McLean*, 129 Mass. 35), and in the other for damages caused to his goods in the lower story of a house by a leaky roof. *Toole v. Beckett*, 67 Me. 544. These cases proceed on the theory that, as to the portions of the building which remain in the landlord's exclusive possession, he retains the responsibilities of a general owner to all persons, including his tenants.

On the other hand, such responsibility to tenants is denied by very respectable authorities. In *Krueger v. Ferrant* (29 Minn. 389), a case almost identical in its facts with *Toole v. Beckett*, the authority of the latter case is denied, the court holding that there seems to be no sound reason why the rule, that there is no implied covenant on the part of the landlord to repair, should not extend in like manner to such portions of the premises which are not demised to the tenant, but which are

necessary to his use or protection, as in the case of a common roof. So in *Cole v. McKey* (66 Wis. 509), and *Purcell v. English* (86 Ind. 34), the authority of the case in *Looney v. McLean* is denied, Judge Elliot, in a well-considered opinion, and upon a full review of the authorities, holding that the Massachusetts case is supported neither by decisions in other states nor by the decisions in the same state cited in the opinion in its support. To the same effect is *Sherwood v. Seaman* (2 Bosw. 132), where it was decided that a landlord, in the absence of an express covenant, is under no obligation to repair, or to do any act to protect his tenant from the consequences of the lawful acts of the owner of adjoining premises, in excavating them to such depth as would endanger the stability of the demised premises.

It is not questioned but that the owner of premises may become liable to a stranger under similar circumstances. That liability, however, as hereinafter stated, rests on a different principle.

While there are many cases in this state deciding the general proposition that a landlord is under no implied obligation to repair premises let, there is none deciding the exact point in controversy here. The nearest approach to it is in the case of *Joyce v. DeGiverville* (2 Mo. App. 596), where this court decided that the landlord is under no implied obligation to repair a privy in a tenement-house, the tenement-house being let to various tenants in separate portions, and the privy being used by them in common.

This being the state of the law, we are in the position of adjudging the case at bar on principle, so far as the same can be done, in harmony with other branches of the law on the same subject expressly decided by the Supreme Court and this court.

The owner's liability to third persons, for injuries received by the defective condition of premises, rests on the principle that each person is bound to so use his property as not to endanger, by the negligent use thereof, the person or property of another. Whether the

negligence consists in the commission of an act, or the omission of an ordinary precaution, is immaterial. It must be borne in mind, however, that strangers occupy no contractual relation with the owner of the property, and are, therefore, powerless to protect themselves against his neglect by an express contract. It is, therefore, but just that such protection should be afforded to them by the implied condition which attaches to the tenure of all property.

The tenant, in that respect, occupies a different position. He stands in a contractual relation with his landlord. So far as he is concerned, one of the reasons of the rule falls away. He knows that, as to the premises occupied by him, the landlord is under no obligation to repair. Does he, therefore, in relation to such part of the premises which, though not occupied by him, are yet essential to the enjoyment of the premises which are thus occupied by him, stand in the position of a tenant, or in that of a stranger? On the one hand, it may be said that it would be unreasonable (if not impracticable) to require that the tenant should repair such part of the premises as are under the exclusive control of the landlord. On the other hand, it may be said that such part of the premises, though not let, are essential to the enjoyment of those let and occupied by the tenant, and thus, incidentally, within the rule that the tenant must protect himself as to repairs by covenant.

It will be thus seen that a plausible argument can be made on either side of the question. The decisive element is, which of the arguments is most consonant with our sense of justice, and yet not opposed to the analogies of the law. Here the wall which fell was in no sense under the tenant's control. It would seem to us he could not have even interfered with it in any way without making himself liable in an action of trespass. For all practicable purposes, he was as much a stranger in regard to this wall as he would be in regard to the wall of an adjoining building owned by the same landlord, the safety of which might have been essential to the prem-

ises let.   Why should the law impose upon a tenant the duty to protect himself by covenants against dangers which could not reasonably have entered into the contemplation of the parties when they made their contract ? The just rule in such a case is, that one who is restricted by the terms of his letting to one part of the premises, who has no possession, control, or right of interference with other parts, should, as to such other parts, which are in the exclusive possession of the landlord, occupy no worse position than a stranger.

This disposes of the main controversy in the present action in favor of the plaintiffs' recovery.   Other complaints made by the appellant may be disposed of briefly. The petition would have been fatally defective if filed in a court of record, but as the action was brought before a justice of the peace, and the statement filed therein was sufficiently definite to advise the defendant of the cause of action, and to bar another recovery for the same cause, the defect will not warrant an arrest of the judgment.

Whether or no the defendant's agents to collect rents were properly his agents to receive notice of the danger of the wall in question is immaterial, since it sufficiently appears from other parts of the record that the defendant was aware of its condition.   The material inquiry is, whether he had notice, and not how he received it ; and that he had timely notice is not substantially controverted.

It results that the judgment must be affirmed.   It is so ordered.   Judge Thompson concurs.   Judge Lewis is of opinion that the decision of the court is opposed to a previous decision of the Supreme Court.   It is, therefore, ordered that the clerk certify the cause and the original transcript herein to the Supreme Court for its final determination, and that all proceedings on the judgment of this court be stayed until the final disposal of the cause by the Supreme Court.

Thompson, J., delivered a separate concurring opinion.

I concur in the conclusion reached by Judge Rom-

bauer, and generally in the reasoning of his opinion. To my mind the turning-point in the case is whether the plaintiff had a qualified possession of the adjoining wall such as entitled him to shore it up. I think there can be no doubt that he had no such possession. We ought to take practical views of the questions which come before us; and it would probably surprise the owners of buildings if we should tell them that when they rent, by the month, a room on the second floor of a large tenement, they thereby invest the tenant with authority to experiment in shoring up the entire wall of the building. The proposition refutes itself, and the conception that such a thing is within the intent of the parties is too fantastical for further discussion.

The wall, then, is in the possession of the landlord and not in the possession of the tenant. And if there is any reason in the analogies of the law, or in the ordinary conceptions of justice upon which men act, why the landlord should not be held to the same duty in respect of this wall, toward his tenant of an adjoining or attached tenement, which is required of him in respect of strangers, I am not able to see it. I, therefore, think that the following language in the opinion of Judge Rombauer makes too great a concession to the landlord: "It must be borne in mind, however, that strangers occupy no contractual relation with the owner of the property, and are, therefore, powerless to protect themselves against his neglect, by an express contract; it is, therefore, but just that such protection should be afforded to them by the implied condition which attaches to the tenure of all property. The tenant, in that respect, occupies a different position. He stands in a contractual relation with his landlord. As far as he is concerned, one of the reasons of the rule falls away. He knows that, as to the premises occupied by him, the landlord is under no obligation to repair. Does he, therefore, in relation to such part of the premises which, though not occupied by him, are yet essential to the enjoyment of the premises which are thus occupied by him, stand in the position of a ten-

ant, or in that of a stranger? On the one hand, it may be said that it would be unreasonable, if not impracticable, to require that the tenant should repair such parts of the premises as are under the exclusive control of the landlord. On the other hand, it may be said that such parts of the premises, though not let, are essential to the enjoyment of those let and occupied by the tenant, and thus incidentally within the rule that the tenant must protect himself as to repairs, by covenant. It will be thus seen that a plausible argument can be made on either side of the question.''

This may be a plausible argument why a tenant should be held bound to repair the actual tenement or other property which he occupies; but to my mind it is not even a plausible argument that he should be held bound to repair that portion of the premises which he does not occupy, but which the landlord occupies, or that he should take the risk of its non-repair. On the contrary, I regard it as a fantastical and sophistical argument, which judges have resorted to for the purpose of finding some reason for favoring landlords and doing injustice to tenants, and I am not disposed to make any concession in favor of it. The idea that a tenant is in a position to protect himself from such consequences by a covenant, whereas a stranger is not, seems to me perfectly absurd. The one is in just as good a position to protect himself in such a way as the other. The tenant can indeed secure a covenant from his landlord against the threatened or contingent injury by paying a consideration for it; and so can one land owner, in exactly the same way, secure such a covenant from an adjoining land owner. In either case it takes two parties to make a contract, and the other contracting party may refuse to enter into the covenant. Outside of this, why should a man be held bound, in the one case more than in the other, to protect himself by covenant from an injury which the law forbids the other party from inflicting upon him? If I buy a horse of a man, would it not be absurd to require me to enter into a covenant with him

that he will not, after delivering it to me, commit a trespass upon it, or steal it from me? So if, for a consideration, I purchase of the owner of a building the right to possess and quietly enjoy, for the space of thirty days, a room in his building, why should the law expect or require me to secure a covenant from him that he will not allow an adjoining wall to fall down and destroy the very thing which he has granted me? The fact that the tenant sustains a contractual relation to the landlord may be a good reason for putting him in a more favorable condition than that of a stranger, but it can afford no reason for putting him in a worse condition.

I am tempted to say here that we have inherited the law of landlord and tenant from a period in the history of the English law, when that law was administered almost entirely in the interest of the landlords, and when the rights of the tenant were ignored and put aside. The monstrous iniquity of distress for rent, which, unless lately abolished, lingers in some of the American states, is an illustration of this. It permitted a landlord to go upon the demised premises and distrain and impound any cattle which he might there find, whether belonging to his tenant or to a mere stranger, and hold them as a security for the payment of any rent in arrear, thus sitting in judgment in a controversy between himself and his tenant, proceeding against the latter without notice, delivering judgment without a hearing, and executing it simultaneously with its delivery, not only upon the property of his tenant, but upon that of a stranger. As great a lawyer as Sir William Blackstone was able to give a legal reason for this iniquitous rule of law, even where it was exerted against an innocent stranger. It was that, otherwise the door would be open to infinite frauds against the landlord, and the stranger would have an action on the case over against the tenant. 3 Black. Com. 8.

This strikingly shows that artificial reasons can be given which will satisfy the minds of lawyers for almost any conclusion, however monstrous or unjust. To my

mind the reason by which Sir William Blackstone attempts to justify the iniquity of allowing a landlord to distrain the cattle of a stranger for rent due from his tenant, is just as good and no better than the reason by which judges have attempted to exonerate landlords from that social duty to their own tenants which the law requires of them in the case of strangers

LEWIS, P. J., delivered a dissenting opinion.

I am unable to agree with my learned associates in the conclusion reached by them in this cause, and deem it contrary to the decisions, heretofore rendered in *Peterson v. Smart* (70 Mo. 38), *Rogan v. Dockery* (23 Mo. App. 313), and *Joyce v. DeGiverville* (2 Mo. App. 596).

It seems to be conceded on all hands that, in the absence of a special contract imposing that duty on him, the landlord is not bound to keep the rented premises in repair, and is, therefore, not liable in damages to his tenant for an injury resulting from a dilapidation of such premises. But my learned associates find that the rule does not apply in this case, because the wall which fell, and caused the injury as a consequence of its fall, was not a part of the rented premises, was not within the possession or control of the tenants, and was within the exclusive possession, and control of the landlord. If these propositions are all true, then the majority conclusion is unquestionably right. But they are not true, as I understand the testimony in the record, and the law applicable thereto.

The testimony shows that the tenants occupied a room on the second floor of the building, to which they had access by a stairway running up through a hall on the east side of the house. This stairway was supported upon joists whose ends were lodged in the two walls which made the hall. The west, or outer wall of the hall, was the one which fell, in consequence of excavations made for a new building adjoining it on the west. It thus appears that the stairway was necessary to the

tenants' enjoyment of their room, and that its use by them was implied in their contract of renting. Their rights in the stairway were identical with their rights in the joists which supported it, and in the wall which held the joists. For, neither one of these three structures could be available for the uses of the tenants, without the two others. There was a direct and necessary connection and dependence between each, or all of them, and the enjoyment of the room rented. Thus, while treating of the rule that a landlord is not bound, without a special contract, to keep in repair the rented premises, the court said, in *Purcell v. English* (86 Ind. 34): "The duty of the tenant to keep in safe condition, for his own use, the demised premises, extends to all the appurtenances connected therewith, and this includes steps, stairways, and other approaches." In *Krueger v. Ferrant* (29 Minn. 385) the same principle was applied to a leaking roof, where the complaining tenant occupied a room on the ground floor and other tenants occupied the second floor, between him and the roof. Said the court: "The rule appears to be well established that there is no implied covenant on the part of the landlord to make repairs, or that the premises are, or will prove to be, suitable for the tenant's use or business. There seems to be no sound reason why this rule should not extend in like manner to portions of the premises not expressly demised to the tenant, but which are necessary for his use or protection; as, in this case, the common roof." A number of authorities are there cited in support of these propositions. I think it is quite clear that the falling wall in the present case, was necessary for the use and protection of the tenants and that it comes literally within the reasoning and the conclusions of the cases above mentioned.

It results that the defendant's liability in this case is not to be tested by the responsibilities borne by an owner of property towards a stranger, but must be determined by the law attaching to the relation of landlord and tenant, where there is no covenant for repairs

by the landlord. If I rightly understand the majority opinion, it assumes that the landlord's exemption from liability in such cases is grounded chiefly upon two propositions: (1) that the tenant has, while the landlord has not, possession and control of the part of the rented premises whose dilapidation caused the injury complained of; (2) that the tenant himself is bound to keep the premises in repair. As to the first proposition I do not find that the authorities generally recognize it as an effective reason for the non-liability of the landlord. *Krueger v. Ferrant* (29 Minn. 385) was decided in favor of the landlord, and yet the court held that the jury were rightly instructed "that the roof of the demised premises was in the charge of the landlord." So it was not because he had no control or possession of the leaking roof, that he was exonerated from liability, but for a very different reason, which will presently appear. The second proposition appears in many of the decisions as a remark incidental to the course of the argument, but not, so far as I can find, as having a controlling weight. The proposition is, on its face, palpably inaccurate. The tenant is *not* bound to keep the premises in repair. He can submit to the inconveniences of non-repair as long as he likes, without violating any obligation to the landlord or to any body else.

The true and controlling principle of the landlord's exemption from liability in the cases supposed lies in his contractual relation with the complaining tenant. His responsibilities to the tenant, as to everything relating to the enjoyment of the rented premises, are limited by the terms of his contract, and he can not be held to anything beyond those terms, unless in certain exceptional matters which have no pertinence to the present discussion. This, as it seems to me, after a careful examination of the authorities, is the real ground-work of all the leading decisions. The potency of this principle is illustrated by the remarks of the Minnesota Supreme Court, in *Krueger v. Ferrant* (29 Minn. 385): "The tenant is the party most interested in

understanding the risks which he will assume in exposing his goods to injury from the elements. It is incumbent upon him to exercise proper care and precaution in the selection and leasing of tenements to be occupied by him. It is his right, and ordinarily his duty, to insist that he be permitted to inspect those portions of the premises which may be important to him, and to require the proper stipulations in the contract for his protection. Taylor Land. & Ten. sect. 175a; *Carstairs v. Taylor*, L. R. 6 Exch. 217; *Keates v. Earl of Cadogan*, 10 C. B. 591, 601." So, in *Rogan v. Dockery* (23 Mo. App. 316), this court said, "his [the landlord's] liability to strangers is grounded on the general duty that is formulated in the maxim, *sic utere tuo ut alienum non laedas*, of so using his property as not to injure that of others. But his obligation to his tenant rests in contract only, and, in the absence of a statute, or of an express agreement, is governed by the implication which the law annexes to the contract, which is, that the tenant is willing, for the rent agreed to be paid, to take the premises as he finds them, subject to any inconveniences or dangers which may attend his occupancy of them." Many other authorities might here be cited to the like effect.

The disaster which was productive of injury in the present case was not caused by any act or omission on the part of the landlord, which could render him responsible as for a breach of duty. The tenants, when they rented the premises, could see for themselves the stairway, hall, and other conveniences which would be necessary or useful in their occupancy of the room. The stairway and its supports, including the west wall, were before them, and they might easily have stipulated for repairs or indemnity in the event of any failure or dilapidation affecting any of these structures. They did not elect to do so, but took the premises as they found them, "subject to any inconveniences or dangers which might attend their occupancy." The hall itself

was necessary to the occupancy and enjoyment of the rented premises, and was, therefore, implicated in the contract of renting. The hall was constructed of the walls which bounded it. The falling of one of these walls was the destruction of the hall, and, therefore, of a part of the premises concerning which the landlord's liability was limited by the terms of his contract. To my mind it is perfectly clear, upon principle, and from all the weight of authority, that, in this case, the landlord is under no legal responsibility for the consequences of an accidental disaster which caused injury to his tenants.

I think, therefore, that the judgment of the circuit court ought to be reversed, and that the cause, as decided by the majority of this court, should be certified for final determination by the Supreme Court, in accordance with the constitutional amendment adopted in November, 1884.