[Civil No. 506.　Filed September 23, 1896.]

[46 Pac. 70.]

## C. A. STEVENS et al., Defendants and Appellants, v. ABIE E. WADLEIGH, Plaintiff and Appellee.

1. LANDLORD AND TENANT—IRRIGATION—LEASE—IRRIGATED LAND—RIGHT TO WATER INCIDENT—COVENANT FOR QUIET POSSESSION — LESSORS NOT LIABLE FOR FAILURE TO MAINTAIN DITCH.—When lands leased are arid, and at the time of the entering into the lease water to irrigate the same is received through a certain community ditch, owned by those having lands to be irrigated therefrom, and kept up and maintained by the landowners, each one being entitled to the proportion of water therefrom that his land bears to the whole number of acres irrigated, the lessee succeeds to the rights and obligations of the lessor in the use of such water, in the absence of special covenants, and for the term of the lease said interest in the water of said ditch attaches to the land. Under such lease, containing a covenant for the peaceable and quiet possession of said premises, the lessor is not liable to lessee for failure to maintain and repair such ditch when the head was washed out by floods in the river.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. Joseph D. Bethune, Judge. Affirmed.

The facts are stated in the opinion.

C. W. Wright, for Appellants.

Water that is used to irrigate land is appurtenant to the land, and passes with the land in the conveyance thereof. *Cave* v. *Crafts,* 53 Cal. 140; *Farmer* v. *Ukiah Water Co.,* 56 Cal. 12. The share of·water in the Farmers' Ditch to which the leased land was entitled was leased with the land. At the time of the lease it was sufficient to insure two crops each year. The lease warrants to the lessee the quiet and peaceable possession of all this property for five years. Lessee had it for two years. He had no water during the year 1892, and because thereof lost all his crops. After the summer of 1892 he regained only two thirds of it. This two thirds was not sufficient for a summer crop. For this reason he abandoned the premises. The "enjoyment of the estate is the consideration for the covenant to pay rent, and when the lessee is deprived of the benefit he cannot be held to pay the compensation." *Stockwell* v. *Hunter,* 11 Met. 455; *Morse* v. *Goddard,* 13 Met. 179; *Royce* v. *Guggenheim,* 106 Mass. 202, 8 Am. Rep. 322; *Leishman* v. *White,* 1 Allen, 489; *Sherman* v. *Williams,* 113 Mass. 485, 18 Am. Rep. 522; *Dyett* v. *Pendleton,* 8 Cow. 728.

Frank H. Hereford, for Appellee.

A warrant of peaceable and quiet possession "relates only to the title, and not to the undisturbed enjoyment of the premises demised." *Playter* v. *Cunningham,* 21 Cal. 233; *Branger* v. *Manciet,* 30 Cal. 626; *Gazzolo* v. *Chambers,* 73 Ill. 75.

And a loss by accident of any portion of the demised premises does not rescind the lease, nor relieve the tenant of his obligation to pay rent, whether by fire, wind, or water. *Diamond* v. *Harris,* 33 Tex. 634; *Ely* v. *Ely,* 80 Ill. 532; *Beach* v. *Farish,* 4 Cal. 339; *Cowell* v. *Lumley,* 39 Cal. 152, 2 Am. Rep. 430; *Sheets* v. *Selden,* 6 Wall. 416; *Harrington* v. *Watson,* 11 Or. 143, 50 Am. Rep. 465, 3 Pac. 173; *Robinson* v. *Engle,* 13 Fla. 482.

The surrender of the premises by the tenant without the assent of the landlord does not release the tenant's liability for rent nor the tenant's sureties. *Livermore* v. *Eddy,* 33 Mo. 547; *McKensie* v. *Farrel,* 4 Bosw. 192.

ROUSE, J.—G. H. Wadleigh, on April 18, 1890, leased to C. A. Stevens certain lands in Pima County, for the full term of five years, for the sum of three thousand dollars, to be paid in installments of fifty dollars per month on the first day of each month, in advance; and for the faithful performance of the conditions of said lease on his part said Stevens executed a bond, in the sum of fifteen hundred dollars, with A. V. Grossette and W. S. Read as sureties. Said lease and bond were assigned to Abie E. Wadleigh, the appellee. The lands leased are arid, and water to irrigate the same was received through a certain ditch and its laterals, called the "Farmers' Ditch." Said ditch was what is commonly called a "community ditch." It was owned by those having lands to be irrigated by the water flowing through it, and was kept up and maintained by the labor of the landowners, each owner of the lands being entitled to a certain part of the water, in the proportion that the number of acres he owned bore to the number of acres watered from the said ditch. The lands leased were, at the date of the lease, entitled to that proportion of the water. The lease contained the following: "And the said lessor hereby agrees and binds himself, his executors and assigns and administrators, to warrant and defend the said lessee, his heirs, administrators, and assigns, in the peaceable and quiet possession of the said premises, and every part thereof, during the term of this lease; and in default thereof the said lessor . . . and assigns will and shall pay unto the said lessee . . . all damages that the said lessee shall sustain by the said failure to defend and warrant the said lease, not exceeding the sum [of] fifteen hundred ($1,500) dollars. . . ." Stevens failing to pay the rent from and after the first day of March, 1893, in May, 1894, Mrs. Abie E. Wadleigh filed her complaint, as plaintiff, against Stevens and his sureties, A. V. Grossette and W. S. Read, on the said bond, for six hundred and fifty dollars, the amount of rent due on the first day of May, 1894. To the complaint defendants answered, and among other things said Stevens alleged, in effect, that plaintiff had failed to deliver the water to irrigate the lands. In consequence of such failure, he had lost one crop in 1892, and had been greatly damaged, and had to abandon said property, for the reason that he could get no water to irrigate said lands, and did abandon said premises in

March, 1893, and asked judgment for said damages in the sum of fifteen hundred dollars, for breach of the warranty of possession, as the amount fixed by the said part of the lease herein quoted. The case came on for trial before the court without a jury, and on the trial the evidence tended to show that the head of said ditch was washed out about July or August, in the summer of 1892, by floods in the Santa Cruz River, the stream from which the said Farmers' Ditch was supplied with water, and that no water flowed in said ditch from said river for about two months; that at the end of said period the head of said ditch was repaired, and about the same quantity of water that had previously flowed through said ditch was again obtained. There was no evidence that plaintiff or her assignor had performed any act or neglected any duty which caused the injury to the said ditch or diminished the quantity of water to which the lands leased by the defendant Stevens was entitled.

Under the allegations in the pleadings, the terms of the lease, and the facts adduced on the trial, we hold that the lease carried with it, for the term of the lease, all the water which could be obtained through the Farmers' Ditch, and that the lessee, by the terms of the lease, had for that period the same rights which the lessor would have had and was under the same obligations to pay for the use and distribution of the water, and to maintain said ditch for the period, as the lessor would have been had he remained in possession,—i. e. that the lessee for that period succeeded to all the rights and obligations that would have belonged to and rested upon the lessor, had he remained in possession; that, for the term of the lease, said interest in the water of said ditch attached to the lands, whether it be under the name of an "appurtenance," or under some other name or appellation. The part of the lease quoted was only a covenant of quiet enjoyment of the lands leased, since there was no eviction. The said covenant was to the extent only that the lessor had a good title, and could give a free, unencumbered lease for the time specified. 1 Washburn on Real Property, 3d ed., p. 428, sec. 2a; *Gazzolo* v. *Chambers,* 73 Ill. 75. Aside from an express covenant to that effect, a landlord is not bound to keep the leased premises in repair, nor is he responsible in damages to his tenant for injuries resulting to the latter from the non-repairs

of the leased premises. *Ward* v. *Fagin,* 101 Mo. 669, 14 S. W. 738; *Peterson* v. *Smart,* 70 Mo. 38; *Brewster* v. *De Fremery,* 33 Cal. 341. And a loss by accident of any portion of the leased premises does not rescind the lease nor relieve the tenant of his obligation to pay the rent. *Ely* v. *Ely,* 80 Ill. 532; *Sheets* v. *Selden,* 7 Wall. 416. The evidence disclosed the further fact that Stevens wrote a number of letters to Wadleigh, after March 1, 1893, of different dates, the last one as late as September or October, 1893. In all of said letters, while there was a declaration that Stevens had moved off the leased lands, yet he stated that he had a family residing thereon, and made mention in glowing terms of the bountiful crops of grain and hay he had growing on said lands. Aside from the matters above mentioned, said letters contained promises to pay the amount of rent due, the dates of payment being fixed at some date not long subsequent to the dates of the respective letters, and also contained excuses for failing to pay the amounts due at the dates fixed in preceding letters. From these letters, and other facts in evidence, the court was justified in finding that the premises were not abandoned at the time Stevens claimed he abandoned the property. We further hold that Stevens could not, under the terms of said lease, abandon said lands, and escape the liability for the rent. The judgment should be affirmed, and it is so ordered.

Baker, C. J., and Hawkins, J., concur.