KUHN, Respondent, vs. SOL. HEAVENRICH COMPANY, Ap-
pellant.

, *September 25 — October 21, 1902.*

*Landlord and tenant: Duty to make repairs: Counterclaim: Amend-*
*ment: Judgment on pleadings.*

· 1. Even where a building is let to several tenants, each having a
    specific part thereof, there is no implied covenant on the part
    of the landlord, forming a part of the leasehold contracts, to
    keep in repair those portions of the building, such as stair-
    ways, halls, and roof, which are necessary. to the protection

and convenience of all the tenants and are used by them in common. *Cole v. McKey*, 66 Wis. 500, explained and followed.

2. In an action for rent under a lease containing no express agreement to repair, the lessee cannot, under sec. 2656, Stats. 1898, plead a counterclaim for damage sustained through the landlord's negligence in failing to make repairs. The lessee's cause of action, if any, is one sounding in tort and entirely independent of the landlord's claim.

3. Where plaintiff's claim is admitted by the answer and no facts to defeat it are stated therein, it is not error to give judgment on the pleadings without permitting an amendment, if leave to amend is not asked.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Action by a landlord to recover $225, past-due rent, from his tenant. The leased premises consisted of the ground floor and part of the basement of a three-story building, the rest of the room therein being leased to various tenants, each having a specific portion thereof. There was no express covenant to keep the building or any part thereof in repair. The complaint was in the usual form. Defendant admitted the indebtedness and counterclaimed for damages to the amount of $378 upon the following alleged facts in addition to those before stated. In the building there was a shaft reaching from the surface of the roof to the ceiling above the first floor. The top, bottom and sides of the shaft were of glass. The purpose thereof was to light the various parts of the building. When defendant entered upon the enjoyment of his lease, the roof of the shaft was in a good state of repair. It was the landlord's duty to keep it so. May 25th, in the nighttime, there was a severe rainstorm, and because of the then defective condition of the lighting shaft, a large quantity of water was admitted into the building and found its way to defendant's stock of clothing on the first floor, damaging the same to the amount of $378. The roof of the shaft where the water entered was out of repair to the knowledge of plaintiff before such occurrence. He endeavored to

repair it but failed to do so efficiently, by reason whereof the damage to defendant's property was caused.

Plaintiff moved for judgment on the pleadings, and the motion was granted. Defendant duly excepted to the ruling.

The cause was submitted for the appellant on the brief of *R. Sleight,* and for the respondent on that of *Sanborn & Sanborn.*

MARSHALL, J.   The trial court granted the motion, supposing the common law that in the absence of an express agreement to the contrary a landlord is under no obligation at all to his tenant to keep the leased premises in repair, ruled the case.   Appellant contends that the rule is not universal; that it does not apply where there are several tenants in a building, each having a distinct part thereof, except as to each tenant for his particular part; that as to those portions of the building necessary for the protection or convenience of all of the tenants in the enjoyment of their respective holdings and used by them in common, such as the stairways, the halls, and the roof—portions which do not pass under the control of any particular tenant—the landlord is bound by an implied promise, forming part of the leasehold contract, to keep the same in repair; and that such exception entitled appellant to recover on its counterclaim.

The position urged upon our attention is not entirely without authority to support it, though counsel is in error, we think, in the idea that the weight of authority is that way. The question is interesting and important.   It has not been decided here that we are aware of, in a case exactly like this, though it has been in principle, as we shall see later.   That there is a duty resting on the landlord in such a situation, to not cause injury to his tenant, and to prevent such injury, has been held in many jurisdictions in actions grounded on negligence.   But there is no authority worthy of our con-

sideration, to support the idea that the duty is one resting in contract. The distinction between the obligations of a contract and the obligation which one owes to another respecting that other's personal safety and the safety of his property, has been many times lost sight of in considering this question, as what follows will demonstrate.

This language from 18 Am. & Eng. Ency. of Law (2d ed.) 220, is called to our attention:

"The rule laid down by the weight of authority is that where the landlord leases separate portions of the same building to different tenants and reserves under his control those parts of the building or premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he so reserves control."

The writer of that text, as is indicated not only by the language used but by the authorities cited, did not use the term "obligation" in a contractual sense, but in that of the duty which, in certain situations, one owes to avoid injuring another, a violation of which constitutes a tort and is actionable as such. In one of the leading cases referred to it was expressly stated that the responsibility of the landlord "cannot be based upon any contract obligation, but must rest entirely upon the element of *delictum*." *Edwards v. N. Y. & H. R. R. Co.* 98 N. Y. 245. In speaking of the contract relations between landlord and tenant, the writer of the quoted language, at page 218, vol. 18, says:

"The general rule that the landlord is under no implied obligation to keep the demised premises in repair is, in most jurisdictions, held equally applicable where only a part of a building is demised; and the landlord is held to be under no implied obligation to keep the portion of the building not demised to the tenant in repair, so as to render tenantable and secure the portion demised to the tenant."

The writer, like many courts that have treated the subject, failed to bring out clearly the distinction before mentioned,

that between implied covenants springing from the lease, and liability for a tortious violation of that duty one person owes to another as regards safety of his person and property.

The cases cited in support of the declaration that in the circumstances under discussion the landlord owes his tenant a duty, went, it will be discovered, as a rule, upon the doctrine of *Sic utere tuo ut alienum non lædas,* though there is reason to say that in some of them the legitimate scope of the maxim was misconceived. There can be no reasonable controversy but that it cannot properly be applied to an obligation resting merely in contract. The idea of it is that no one has a legal right to so use his own property as to injure, in a physical sense, the property of another.

*Toole v. Beckett,* 67 Me. 544, is confidently referred to by appellant's counsel. It is sufficient for this case to say of that one that the action was not to recover on contract, but for a tortious act. True, the nature of the wrong complained of was failure to repair a roof under very much the same circumstances as those we have before us; and if this were an action for damages for negligent inattention to the roof, *Toole v. Beckett* would be in point for what it is worth, though it has been pronounced unsound by most courts that have considered it. Certainly, none of the authorities cited by the learned court in support of its decision involved an implied contract as between landlord and tenant or any other obligation specially applicable to that relation. To illustrate: *Kirby v. Boylston M. Asso.* 14 Gray, 249, was an action for personal injuries caused by a sidewalk being unsafe for travel by reason of an accumulation of snow and ice thereon. It was claimed that such unsafe condition was produced by the improper discharge of water upon the walk from the defendant's building, the rooms in which were occupied by numerous tenants, each having a specific part thereof, the defendant retaining charge of the passage ways and roof and general care of all parts of the building necessary for the common use

of the tenants. The court held that if the defendant's structure produced the nuisance which caused the injury he was liable. It will be easily seen that the principle involved is familiar and has nothing to do with the contractual duties of the owner of a building to his tenants. *Priest v. Nichols,* 116 Mass. 401, was an action sounding in tort. It did not involve any question whatever as to the duty of a landlord specially to his tenant to repair. The wrong complained of would have been actionable had it been committed to another tenant in the building or by a stranger. The landlord used a part of the structure as an engine room. He operated the engine in such a negligent manner as to permit water from the waste pipe thereof to escape and reach the plaintiff's property. In *Gray v. Boston G. L. Co.* 114 Mass. 149, the controversy was between the landlord and a stranger, the latter being a sufferer from the negligence of the former in permitting a chimney to fall from his building. In *Norcross v. Thoms,* 51 Me. 503, defendant was held guilty of maintaining a nuisance to the injury of the plaintiff in that he so conducted a blacksmith shop as to cause dust and ashes to pass therefrom to the plaintiff's property to its injury. The relation of landlord and tenant was not involved directly or indirectly.

Where there is any support in the cases above referred to for the decision in *Toole v. Beckett,* we are unable to understand. Many courts have expressed the same views. *Jones v. Millsaps,* 71 Miss. 10, 14 South. 440 ; *Krueger v. Ferrant,* 29 Minn. 385, 13 N. W. 158 ; *Ward v. Fagin,* 101 Mo. 669, 14 S. W. 738 ; *Purcell v. English,* 86 Ind. 34. In *Looney v. McLean,* 129 Mass. 33, like the other cases upon which counsel relies, the landlord was held liable to his tenant for negligence upon the same principle that he would have been to a stranger for inducing a tenant to use a portion of the building which he undertook to keep in order, knowing that it was unsafe.

Argument seems unnecessary to show that if we were to concede that *Toole v. Beckett* and *Looney v. McLean* were correctly decided, they are not authority for a recovery by a tenant upon an implied contract to repair. In *Tuttle v. Gilbert Mfg. Co.* 145 Mass. 169, 13 N. E. 465, *Looney v. McLean* was considered, it being particularly pointed out that it went on negligence, not on contract. Textwriters generally do not recognize the exception for which counsel contends. Chaplin, Landl. & Ten. § 247; 1 McAdam, Landl. & Ten. 436; Hall, Mass. Landl. & Ten. § 25; Taylor, Landl. & Ten. p. 376, note 2. In Woodfall, Landl. & Ten. 173, 174, note, a misconception of principles and authorities is observable. The writer says there is no implied covenant on the part of a landlord to repair where the whole building is leased, while there is such a covenant where the building is leased to several tenants. Many cases are cited which turned on the general common-law rule under discussion, and others on liability for negligence, the writer failing to discover the distinction between the two classes. That confusion easily led to the error of supposing that the rule holding the landlord liable for negligence is necessarily an exception to the common-law exemption of the landlord from any liability by implied covenant or contract. No better illustration of the writer's confusion can be given than to call attention to the fact that *Krueger v. Ferrant,* 29 Minn. 385, 13 N. W. 158; *Purcell v. English,* 86 Ind. 34; *Doupe v. Genin,* 45 N. Y. 119, and other cases expressly holding that there is no exception to the common-law rule as to liability upon implied contract, are cited in close connection with *Scott v. Simons,* 54 N. H. 426, *Cole v. McKey,* 66 Wis. 500, 29 N. W. 279, and other cases where a recovery was sought for actionable negligence.

The only case of consequence that we are aware of, where an action to recover damages upon an implied contract to repair in circumstances similar to those here was sustained, is

*Bissell v. Lloyd,* 100 Ill. 214. No authority is cited to support the decision. As said of it in *Jones v. Millsaps,* 71 Miss. 10, 14 South. 440, "it is the naked assertion of a court of last resort," that is all. Even as such it would of course be entitled to respect if the question treated was doubtful and the indications were that the court fully grasped the principles involved. The indications in the Illinois case are to the contrary. It is quite plain that the court confused liability resting purely on negligence and liability resting in contract. If there was doubt about that it would be solved by the later case of *Payne v. Irvin,* 144 Ill. 482, 33 N. E. 756, an action sounding in tort, where the former case, and the leading cases to which we have referred, grounded on negligence, were cited in support of the result reached.

Enough has been said, even if the question were entirely new in this state, to demonstrate that the common-law rule, that there is no implied covenant on the part of a landlord of fitness, present or future, of leased premises, forming a part of the contract between him and his tenant, is universal; that it applies as well to a lease of part of a structure, other parts being let to others in severalty, and to parts thereof common to all, as to leased premises constituting an entire building. But it is not entirely a new question here. It was considered in *Cole v. McKey,* 66 Wis. 500, 29 N. W. 279, and *Dowling v. Nuebling,* 97 Wis. 350, 72 N. W. 871. *Cole v. McKey,* rightly understood, declares the law in perfect harmony with *Krueger v. Ferrant,* 29 Minn. 385, 13 N. W. 158, and it is often referred to in connection with such case, as will be observed by referring to the authorities we have cited. We might have satisfactorily decided this case by the mere statement that it was ruled by *Cole v. McKey,* were it not for the fact that it seems to be misunderstood by counsel for appellant. That probably comes from the fact that the action was grounded on negligence, and the court, in disposing of it, said there might be a liability in case of the breach

of a positive duty to the tenant, without any extended discussion of the matter to render it plain that the duty spoken of was not of a contractual nature. However, why the position of the court on the subject should be misunderstood, when the opinion is read with proper attention to the subject under discussion, is not easily perceived. While it is recognized that a person standing in the relation of landlord to another may be liable to such other for a wrong done to him in respect to the subject of the tenancy, in the opening lines of the opinion it was in effect stated that there was no contract liability on the facts presented by the record, a situation similar to the one before us. This language was used:

"The rule seems to be well settled that, in the absence of any secret defect or deceit or warranty or agreement on the part of the landlord to repair, the tenant takes the leased premises in the condition they happen to be in at the time of the leasing, and that in such case the landlord is not liable to the tenant for an injury caused by the premises being out of repair during the term."

True, the court did not in terms say, in the circumstances mentioned, that there is no contractual liability, and when it came to speak of liability growing out of a breach of duty on the part of the landlord, the term "duty" was not so used as to expressly negative any idea that an obligation resting in contract was meant; but that one the violation of which constitutes a tort—actionable negligence—was in mind, seems perfectly plain. The relation of landlord and tenant is essential to render active the principle spoken of in the opening part of the opinion, while it is not as to the one which was later discussed, and the real vital principle in the case. If courts and textwriters had been more careful in pointing out the distinction between breach of implied contract to repair and breach of duty involving a wrong of a tortious character, and not fallen into the error of confusing the two, many of the apparent conflicts to which we have referred, necessarily tending to useless litigation, would not exist.

Enough has been said to demonstrate that the trial court rightly decided that respondent failed to state in his answer a right to recover for breach of implied covenant to repair, which it is conceded is the sole ground for recovery pleaded. It is suggested that the court should have permitted an amendment instead of rendering judgment after deciding that the pleading was insufficient. To that there are two satisfactory answers. First, there was nothing in the situation to render it probable that the counterclaim could have been made good by amendment. If facts exist, not pleaded, sufficient to make out, with those contained in the defective paper, a cause of action for negligence, which it seems is doubtful, it does not constitute "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation for the plaintiff's claim," nor one "connected with the subject of the action" within the meaning of subd. 1, sec. 2656, Stats. 1898; nor one satisfying any other statutory definition of "counterclaim." Looking at appellant's claim from the standpoint of what constitutes a pleadable cause of action in his situation, we readily see that it is entirely independent of the respondent's claim. If a person, while in the store of another by that other's implied invitation, received an injury by the latter's negligence and sued to recover therefor, no one would claim, we apprehend, that such other could counterclaim for an indebtedness contracted by such person to him on the occasion of the injury. The two would have no necessary legal or equitable connection. They would constitute two entirely independent claims. Therefore, neither could be said to grow out of or be connected with the subject matter of the other. The illustration fits the situation under consideration.

Second. But the conclusive answer to the suggestion that the court erred in not permitting an amendment is that permission was not asked, and that on a motion for judgment, where the plaintiff's claim is admitted by the answer and no

facts are stated therein to defeat such claim, the court is not bound to permit an amendment, regardless of the defendant's attitude in the matter.

*By the Court.*—The judgment appealed from is affirmed.