**PARK–LAKE CAR WASH,**
**INC., Appellant,**

*v.*

**Arthur J. SPRINGER, et al.,**
**Respondents.**

**No. C3–83–458, C7–83–706.**

Supreme Court of Minnesota.

Aug. 3, 1984.

Rehearing Denied Sept. 6, 1984.

---

Josiah E. Brill, Jr., Minneapolis, for appellant.

Douglas R. Rainbow, Minneapolis, for respondents.

WAHL, Justice.

Appellant Park-Lake Car Wash (Park-Lake) sued Arthur J. Springer in Hennepin County District Court for specific performance of a contract for the sale of real estate. The trial court determined that no contract ever arose, because Park-Lake failed to effectively exercise its right of first refusal on sale of the property, and granted summary judgment for Springer. Park-Lake appealed to this court and moved in district court to vacate the summary judgment or to condition dismissal on the return of the $8,500 in earnest money still held by Springer. The trial court denied the motion for lack of jurisdiction once the appeal was filed. Park-Lake filed a second notice of appeal from that decision. We reverse.

Park-Lake Car Wash, formerly Automatic Car Wash, Inc., leased the property on which it was located from Arthur J. Springer under a lease which was due to expire on June 30, 1983. The original lease, signed between Springer and Automatic Car Wash in 1953, was for a 10-year period, with the tenant having the option to extend the lease for two additional 10-year periods on the same terms except for renegotiation of the rent at each extension. The original lease also required the construction of a carwash by Automatic according to specifications in the lease.

The parcel leased was the west one-half (W ½) of three lots. Springer also owned the east one-half (E ½) of the three lots. The lease requires that the tenant pay, "as further rent," the real estate taxes on both the W ½ (the parcel leased) and the E ½ (the adjoining parcel).

Article IV(d) of the lease contains a right-of-first-refusal provision (in favor of the tenant) with regard to the sale of the W ½ and the E ½. This provision is central to this dispute and reads:

> Lessor shall not sell either the leased premises or the said adjoining premises without first giving Tenant the privilege to purchase the same at the best bona fide offer by the lessor [sic] at any time during the period or extended period of this lease. Said offer shall be accompanied by a certified or cashier's check of the offeror. of at least 10% of the offered sale price. Written notice of such offer and a photostatic copy of said check shall be sent to the Tenant, who shall, within thirty (30) days after receipt of such notice remit a cash payment to Lessor equal to 10% of such offer, and the cash balance of said sale price within forty-five (45) days following such remittance.

This clause was bargained for and included in the lease to allow Park-Lake the opportunity to protect its capital investment.

In 1979, Springer received an offer for the E ½ from Jack and Boneigh Christy (the Christys). He gave notice to Park-Lake pursuant to the right-of-first-refusal provision in the lease. Park-Lake declined to exercise its right to purchase that parcel. Springer subsequently sold the E ½ to the Christys by a contract for deed.

On July 9, 1980, Springer received an offer from the Christys, in the form of a purchase agreement, to purchase the W ½ parcel. The terms of the Christys' offer included a contract for deed and an extra payment to Springer of an amount equal to the amount of real estate taxes on the W ½ each year until the expiration of Park-Lake's lease in 1983. This extra payment was not for taxes but was an extra benefit to Springer. Park-Lake had the responsi-

bility for the taxes on both the W ½ and the E ½ under the lease. The offered purchase price for the W ½ was $85,000.

Springer sent copies of the proposed purchase agreement, the proposed contract for deed and the 10% earnest money check to Park-Lake pursuant to the right-of-first-refusal provision of the lease. Park-Lake decided to exercise its right and replied on August 4, 1980, saying it would purchase the parcel for $85,000 cash. Springer advised Park-Lake that unless it remitted a cash payment of 10% of the offer in accordance with the terms of the lease and carried out the "other requirements relating to the exercise of [Park-Lake's] privilege to purchase under the lease," the West ½ would be sold to the Christys. Park-Lake responded, by letter dated August 4, 1980, that it would exercise its option to purchase the property for $85,000 cash. Enclosed in the letter was a bank money order for $8,500 (10% of the purchase price). The letter also stated that Park-Lake anticipated closing within 45 days, at which time it would remit the remainder of the $85,000. Park-Lake's attorney, hand-delivering a copy of the letter to Springer's attorney, was told by Springer's attorney that a cash payment was unacceptable to Springer and that Park-Lake was obliged to match the extended payment terms as set out in the Christy purchase agreement.

On August 6, Park-Lake sent a second letter, amending the first, to exercise the right of first refusal by accepting all the terms of the Christy's proposed purchase agreement and contract for deed.

Following this second letter there ensued several conversations between the attorneys as to the terms of the purchase agreement, especially as regarding the payment of an amount equal to the real estate taxes through the end of the lease. Once the lease was terminated, Park-Lake would no longer be responsible for the taxes under the lease. Springer argued that he would be denied the extra benefit of the amount of the real estate taxes because under the terms of the contract for deed he would have to use the extra payment to pay the taxes if they were not otherwise paid. The amount was not insignificant, because there were three years remaining on the lease. Park-Lake maintained that it had no further obligation under the right-of-first-refusal provision of the lease than to accept the exact offer of the Christys, including the provision that the buyer would pay taxes by paying an amount equal to the taxes to Springer regardless of whether the taxes were paid by some other source. Springer demanded a modified contract for deed that would continue to hold Park-Lake responsible for paying real estate taxes as well as for the extra payment to Springer. Park-Lake refused the demand, and Springer sold the parcel to the Christys.

Park-Lake sued to have the terms of the original purchase agreement enforced. The trial court determined that no contract ever arose between Springer and Park-Lake because the August 4 letter constituted a counteroffer, not an acceptance, and terminated Park Lake's right of first refusal, making the August 6 letter inoperative as an acceptance.

We must determine on this appeal whether the tenant, Park-Lake, properly exercised its right of first refusal under the lease to purchase the leased premises so as to be entitled to specific performance of the contract thereby created. The right-of-first-refusal provision in the lease is similar to an option contract. The difference is that the right of first refusal requires a condition precedent before it may be exercised. 11 S. Williston, *A Treatise on the Law of Contracts*, § 1441A (3d ed. 1968 & Supp.1983). The condition precedent is that the owner must have received a bona fide offer from a third party which he or she is willing to accept. Otherwise a right of first refusal is a binding option contract so long as it, like any other option, is bargained for and is given in return for consideration.

Springer argues at the outset that the first-refusal provision is ambiguous and, therefore, unenforceable. He asserts that the provision sets out that the tenant must match the terms of the best bona fide

offer but then goes on to contemplate a cash transaction. He contends that the two provisions are irreconcilable and create an ambiguity, which makes the entire provision void, at least in the context where the third party is offering an installment payment transaction. We do not agree. The actual language of the provision is that the tenant may purchase either the leased premises or the adjoining premises "at the best bona fide offer" and, further, that within 30 days after receipt of the notice of the offer, the tenant shall "remit a cash payment to Lessor equal to 10% of such offer and the cash balance of said sale price within 45 days following such remittance." The possible ambiguity is in the word "offer," which is usually interpreted to include all the terms of the offer. *Minar v. Skoog*, 235 Minn. 262, 50 N.W.2d 300 (1951). By using the phrase, "*at* the best bona fide offer" (emphasis added), however, in connection with the cash payment provision, the parties clearly indicated that the word "offer," in the context of this lease provision, meant the amount of the purchase price offered, not the terms of the offer, and that a cash transaction was contemplated.

It is true that the right of first refusal in *Minar* was interpreted to mean that the holder of the right must match the terms of the offer with exactitude. *Id.* at 265, 50 N.W.2d at 302. The lease provision in *Minar*, however, provided only that "[i]f the lessor * * * elects to sell said building, the lessees shall have the first option of purchasing the same." *Id.* at 263, 50 N.W.2d at 301. The acceptance of the tenant in that case had to mirror exactly the offer of the lessor. The right-of-first-refusal provision in the instant case, however, requires that the holder match the purchase price offered by the third party to the lessor in a cash transaction. The fact that the parties contracted for this specific provision does not make it ambiguous.

 Park-Lake's August 4, 1980, letter notified Springer that Park-Lake was exercising its right of first refusal to purchase for the price offered by the Christys ($85,-

000), tendered 10% of the purchase price and stated that it anticipated closing the cash transaction within 45 days. While this letter does not match the exact terms of the Christys' offer, it does exactly follow the requirements of the first-refusal provision in the lease. The continuing, irrevocable offer from the lessor requiring acceptance by the lessee to create a valid contract was, by virtue of the first-refusal lease provision bargained for by the parties, an offer to sell the leased property in a cash transaction at the purchase price offered by a third party. On its face, the letter did not constitute a counter offer but effectively exercised the right of first refusal and was "unequivocally expressive of an intent to create thereby, *without more*, a contract." *Minar*, 235 Minn. at 266, 50 N.W.2d at 302 (emphasis in original). The letter constituted a valid acceptance which created a contract not subject to rejection and not requiring further approval by the lessor. *Id.* We hold that Park-Lake effectively exercised its contractual right of first refusal by following exactly the procedures outlined by the lease provision and thereby created a contract for the purchase of the leased premises.

 The parties immediately on delivery of the August 4 letter mutually modified that contract to conform to the exact terms of the Christys' purchase agreement with Springer. That modification, for such it was rather than a second attempt to exercise the right of first refusal, was set out by Park-Lake in its letter to Springer dated August 6, 1980. Springer's further attempt to modify the contract by adding a term to the agreement with Park-Lake that was absent from the Christys' purchase agreement was rejected by Park-Lake. We hold that Park-Lake is entitled to specific performance of the modified contract, documented in the August 6, 1980, letter, which incorporated the exact terms of the Christys' purchase agreement.

Springer and the trial court were concerned that if Park-Lake purchased the property by matching the exact terms of the Christys' offer, Park-Lake would no

longer be required to pay the taxes it paid as lessee. Springer would then have to use the amount equal to the amount of real estate taxes on the W ½ under the purchase agreement to pay those taxes and would be denied this further benefit he would have received had the Christys been the purchasers. This consideration, in our view, is not relevant to whether a valid contract was created by Park-Lake's exercise of its right of first refusal. Springer knew of that right of first refusal and should have known that once Park-Lake's obligations under the lease ceased by operation of law when Park-Lake acquired the fee interest, Park-Lake could no longer be required to pay the real estate taxes under the lease from that point on. Springer could have structured the agreement with the Christys so that the result for him would have been the same regardless of whether the eventual purchaser was Park-Lake or the Christys.

Because there existed a binding, executory contract between the parties, we reverse the order of the district court dismissing Park-Lake's complaint with prejudice and granting summary judgment for Springer. We remand the case for a determination of other issues raised and not decided below.

Reversed and remanded.