**David DYRDAL, Appellant,**

v.

**GOLDEN NUGGETS, INC., Respondent,**

**Ron Micke, et al., Respondents (A03–214),**

**Gregory Dyrdal, Appellant,**

v.

**James R. Licking, et al., Respondents (A03–215).**

**Nos. A03–214, A03–215.**

Court of Appeals of Minnesota.

Dec. 16, 2003.

Erica G. Strohl, William M. Hart, Mark A. Bloomquist, Meagher & Geer, Minneapolis, MN, for appellants.

Michael L. Jorgenson, Charlson & Jorgenson, Thief River Falls, MN, for respondent Golden Nuggets.

Delray L. Sparby, Ihle & Sparby, Thief River Falls, MN, for respondents.

Considered and decided by HUDSON, Presiding Judge; RANDALL, Judge; and PETERSON, Judge.

## OPINION

PETERSON, Judge.

This consolidated appeal involves lawsuits brought separately by appellant Gregory Dyrdal and appellant David Dyrdal, in connection with the sale of two properties. Gregory Dyrdal sued respondents James Licking, Ed Faltin, and Ron Micke, seeking to enjoin the sale of a 452–acre parcel of land Licking owned. Gregory Dyrdal alleged that Licking deprived him of the opportunity to exercise his right of first refusal to buy the land by offering Faltin, the prospective buyer, terms that were more favorable than the terms that Licking offered to him. Gregory Dyrdal later dismissed his claim, having concluded that the more favorable terms Licking offered Faltin were insufficient to justify injunctive relief. He now appeals from the district court's order awarding respondents Licking, Faltin, and Micke bad-faith attorney fees as sanctions under Minn. Stat. § 549.211 (2002).

David Dyrdal (Dyrdal) sued respondent Golden Nuggets, Inc., seeking both a declaration that he was entitled to sole possession of a 640–acre parcel of land Golden Nuggets owned and damages for breach of Golden Nuggets's implied duty to repair. Both parties moved for summary judgment, and the district court ruled in favor of Golden Nuggets. Dyrdal now appeals from summary judgment dismissing his claims that Golden Nuggets (1) deprived him of the opportunity to exercise his right of first refusal to buy the land by not disclosing all the terms and conditions of

an offer from Micke Pokel Farms, the prospective buyer, and (2) breached its implied duty to repair the ditch walls and embankments on the land. Dyrdal also appeals from summary judgment in favor of Golden Nuggets on its claim that Dyrdal tortiously interfered with Golden Nuggets's contractual relation with Micke Pokel Farms by recording a notice of lis pendens, and from the award of bad-faith attorney fees under Minn.Stat. § 549.211 (2002).

We affirm in part and reverse in part.

## FACTS

David Dyrdal began renting a 640–acre parcel of farmland from Golden Nuggets, Inc., in 1988. He executed leases in 1988, 1994, and 1999. The 1999 lease, in effect when this dispute arose, gave Dyrdal a right of first refusal to buy the land if another party made a bona fide offer to buy it. But the lease did not specify a method for providing notice of a bona fide offer. And, in contrast to the 1994 lease, which gave Dyrdal 45 days to accept or reject a third-party offer, the 1999 lease did not specify a time limit for exercising the right of first refusal. However, an undated and unsigned "clarification" sent to Dyrdal after the lease was executed gave Dyrdal 48 hours to match the terms of a third-party offer.

In early August 2001, Dan Narlock, Golden Nuggets's farm manager, notified Dyrdal that Golden Nuggets had received a bona fide offer for the land from respondent Micke Pokel Farms. Soon after, Dyrdal received a letter from Golden Nuggets's attorney, stating that Dyrdal's right of first refusal had expired after 48 hours from receiving notice of the proposed sale. Dyrdal responded that he was under the impression that he had 45 days to exercise his first-refusal right and that, in any event, he had not received a copy of the

purchase agreement. Golden Nuggets faxed Dyrdal a signed but largely illegible copy of the purchase agreement. Shortly after, it sent Dyrdal a legible but unsigned copy, which Dyrdal received on August 21, 2001.

The purchase agreement reflected an offer from Micke Pokel Farms to buy the land for $265,000, and listed February 5, 2002, as the closing date. The purchase agreement conflicted with a letter Dyrdal received from Golden Nuggets's attorney, stating that the prospective buyer had offered $252,000 for the land. Dyrdal claims that the purchase agreement also conflicted with (1) an August 2001 oral agreement for the sale of the land between Donovan Dyrdal (Dyrdal's brother) and Dennis Baumert (a Golden Nuggets shareholder); (2) Baumert's subsequent statement to Donovan Dyrdal that the sale to Micke Pokel Farms was scheduled to close, at the latest, before the end of 2001 (rather than in February 2002); and (3) rumors that the sale to Micke Pokel Farms included a local-land exchange.

According to Dyrdal, these inconsistencies, along with suspicions that Narlock had denied Gregory Dyrdal the opportunity to exercise his right of first refusal to buy a different parcel of land, led him to believe that the purchase agreement did not accurately reflect all of the terms and conditions of Micke Pokel Farms's offer. Based on that belief, Dyrdal commenced the present action on August 19, 2001, and recorded a notice of lis pendens. Dyrdal took no steps to exercise his right of first refusal, either before or after commencing this action.

Golden Nuggets counterclaimed, alleging that by recording the notice of lis pendens, Dyrdal unjustifiably interfered with its contract with Micke Pokel Farms. Both Golden Nuggets and Dyrdal moved for summary judgment. Golden Nuggets

included a request for bad-faith attorney fees within its motion, but it did not file and serve a separate motion seeking attorney fees. The court granted Golden Nuggets summary judgment dismissing Dyrdal's first-refusal and breach-of-duty claims and awarded bad-faith attorney fees as sanctions against Dyrdal.

In dismissing the first-refusal claim, the court reasoned that Golden Nuggets properly notified Dyrdal of Micke Pokel Farms's offer when it sent him a copy of the purchase agreement. The court found that the purchase agreement Dyrdal received was identical to the one Micke Pokel Farms received and that Dyrdal made no attempt to exercise his right of first refusal. In dismissing Dyrdal's breach-of-duty claims, the court reasoned that Golden Nuggets had no duty to maintain and repair the ditch walls and embankments on the land because the lease contained no agreement on the subject and a duty to repair may not be implied.

The court also denied Dyrdal summary judgment dismissing Golden Nuggets's claim of interference with contractual relations and held that Dyrdal interfered with Golden Nuggets's contract with Micke Pokel Farms by recording the notice of lis pendens without justification. Because at the time of the summary-judgment hearing Golden Nuggets had not yet suffered any damage, the court allowed Golden Nuggets to make a claim for damages later, after it sold the land.

Finally, the court awarded Golden Nuggets and respondents Licking, Faltin, and Micke bad-faith attorney fees. The court rejected David and Gregory Dyrdal's claim that the respondents' failure to file a separate motion for sanctions precluded the imposition of sanctions and premised its award of bad-faith fees on a finding that the Dyrdals initiated their lawsuits merely on suspicions that they were offered terms different from those offered respondents Faltin and Micke Pokel Farms and presented no evidence in support of their position. The court also found that the Dyrdals acted in disregard of respondents' property rights.

## ISSUES

I. Did the district court properly grant summary judgment dismissing Dyrdal's claim that Golden Nuggets deprived him of the opportunity to exercise his right of first refusal by failing to provide him with notice of all the terms and conditions of Micke Pokel Farms's purchase offer?

II. Did the district court err in concluding that Golden Nuggets had no implied duty to repair the ditch walls and embankments on the land?

III. Did the district court err in concluding that Dyrdal interfered with Golden Nuggets's contractual relation with Micke Pokel Farms by recording the notice of lis pendens?

IV. In the absence of separate motions for sanctions, did the district court abuse its discretion by awarding respondents bad-faith attorney fees under Minn.Stat. § 549.211 (2002)?

## ANALYSIS

### I

Dyrdal first argues that the district court erred in granting Golden Nuggets summary judgment dismissing his claim to sole possession of the land. Specifically, Dyrdal claims that he could not accept the offer on the same terms as Micke Pokel Farms—as he was required to do to exercise his right of first refusal—because Golden Nuggets failed to provide him with a signed, legible copy of the purchase agreement that contained all of the terms and conditions of the proposed sale. Al-

ternatively, Dyrdal argues that summary judgment was not appropriate because genuine issues of material fact remain as to whether the purchase agreement he received contained all of the terms and conditions of Micke Pokel Farms's offer.

In the context of transactions involving real property, the right of first refusal is in essence a "dormant option" to buy or lease property. *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 673 (Tex.Ct.App. 2003). In effect, the right of first refusal gives the right-holder the right to "preempt" a willing and able third party from buying or leasing the burdened property. 3 Eric Mills Holmes, *Corbin on Contracts* § 11.3 (rev. ed. 1996). Unlike an option, however, the right of first refusal is contingent on the property owner's receipt of an acceptable bona fide offer from a third party. *Park–Lake Car Wash, Inc. v. Springer*, 352 N.W.2d 409, 411 (Minn.1984). Once the owner receives an acceptable offer and notifies the right-holder, the right of first refusal is triggered. *Corbin, supra*, § 11.3, at 470–71. It then "ripens" into an option, which can be exercised like any other option and is subject to the same rules as other options. *Id.*

The requirements for the notice that an owner must give to trigger the right of first refusal are generally specified in the parties' agreement. When the agreement is silent as to notice, however, most courts agree that any method that gives the right-holder notice of a potential sale and reasonably discloses the terms of the sale is sufficient to trigger the right of first refusal. *John D. Stump & Assocs. v. Cunningham Mem'l Park, Inc.*, 187 W.Va. 438, 419 S.E.2d 699, 706 (1992) (stating that "[m]ost courts, without any elaborate discussion, require only that reasonable notice be given [to the holder of a first-refusal right]"). In most cases, a copy of the purchase agreement provides reasonable notice of a bona fide offer, even if the agreement does not disclose all of the terms of the sale. *See Koch Indus. v. Sun Co.*, 918 F.2d 1203, 1212–13 (5th Cir.1990) (holding that even though holder of first-refusal right conceivably lacked information about rates refinery vendor's affiliate would continue to pay vendor for storage of crude oil, vendor reasonably disclosed terms of purchase offer by sending holder of right of first refusal copies of proposed sale and option agreements).

The lease between Dyrdal and Golden Nuggets did not specify the method for providing notice of a bona fide offer. Thus, any method that reasonably disclosed the terms of Micke Pokels Farms's offer—including providing Dyrdal with a copy of the purchase agreement—was sufficient to trigger Dyrdal's right of first refusal. Relying on *Minar v. Skoog*, 235 Minn. 262, 265, 50 N.W.2d 300, 302 (1951), Dyrdal argues, however, that the purchase agreement did not constitute adequate notice of the proposed sale because it was not signed. But *Minar* does not stand for the proposition that a seller must provide the holder of a first-refusal right with a signed copy of the purchase agreement; *Minar* holds that to exercise a right of first refusal, a buyer must match the terms of a bona fide offer with exactitude. *Id.* at 265–66, 50 N.W.2d at 302. As a matter of law, a purchase agreement constitutes the "offer" a right-holder must match to exercise a right of first refusal. *Koch Indus.*, 918 F.2d at 1212–13 (stating that sale agreements constitute the "offer" holder of first-refusal right must accept or reject within a reasonable time). Dyrdal had an opportunity to match the terms of the purchase agreement with exactitude.

Alternatively, Dyrdal argues that the purchase agreement did not constitute

adequate notice of the proposed sale because it did not fully disclose the terms and conditions of Micke Pokel Farms's offer. Minnesota courts have not yet determined how specific the notice of a proposed sale must be when, as in this case, the agreement granting the right of first refusal does not specify what information needs to be disclosed. Other courts have ruled, however, that owners have an initial duty to make only reasonable disclosure of an offer's terms. *Koch Indus.*, 918 F.2d at 1212. Disclosure is reasonable if it provides the right-holder with sufficient information to make an informed decision about exercising the right of first refusal. *See Stump*, 419 S.E.2d at 706 (stating that "[t]he primary purpose of the notice by the property owner is to provide the holder of the right of first refusal with sufficient information to determine whether he is interested in exercising the right"). To be reasonable, the notice of a third-party offer need not specify all of the terms and conditions of the proposed sale. *Koch Indus.*, 918 F.2d at 1212–13 (holding that vendor reasonably disclosed offer terms by sending holder of first-refusal right copies of proposed sale and option agreements, even though right-holder conceivably lacked information about rates vendor's affiliate would continue to pay vendor for storage of crude oil). *But cf. Gyurkey v. Babler*, 103 Idaho 663, 651 P.2d 928, 931 (1982) (stating that holder of first-refusal right "cannot be called upon to exercise ... that right unless the *entire* offer is communicated to him in such a form as to enable him to evaluate it and make a decision"); *Hancock v. Dusenberry*, 110 Idaho 147, 715 P.2d 360, 364–65 (Ct.App.1986) (applying *Gyurkey*).

Golden Nuggets reasonably disclosed the terms of the proposed sale by sending Dyrdal a copy of the purchase agreement. The district court found that the purchase agreement reflected all of the terms of Micke Pokel Farms's offer, and the district court's finding is not clearly erroneous. Even if the purchase agreement did not fully disclose the terms of the sale, however, the disclosure was reasonable because it gave Dyrdal actual notice of the potential sale and sufficient information to determine if he was interested in exercising his right of first refusal.

■ Once a landowner reasonably discloses the terms of an acceptable third-party offer, "the holder of the right of first refusal has a duty to undertake a reasonable investigation of any terms unclear to him." *Comeaux v. Suderman*, 93 S.W.3d 215, 221 (Tex.App.2002); (citing *Koch*, 918 F.2d at 1212). In *Comeaux*, the parties' lease provided that the sale of the land was subject to the lessee's right of first refusal to buy the property on the same terms and conditions as those offered by a prospective buyer. *Id.* at 217. As in this case, the lease did not specify how notice of a potential sale was to be provided. *Id.* After receiving an offer to buy the land, the lessor notified the lessee. *Id.* But the notice of the sale did not specify the total acreage to be sold or include an earnest-money contract. *Id.* As a result, the lessee assumed that the sale involved 22 rather than 35 acres and chose not to exercise his first-refusal right. *Id.* at 218.

After the land was sold, the lessee sued the lessor for specific performance or damages, claiming that because the lessor's notice did not include the total acreage or the earnest-money contract, his right of first refusal was never triggered. *Id.* at 218, 221. The court granted summary judgment for the lessor, holding that the lessee received sufficient notice of the proposed sale and that his failure to exercise his option to buy the land terminated his first-refusal right under the lease. *Id.* at 222–23. The court rejected the lessee's

claim that the holder of a right of first refusal is not required to do anything until the owner of the property conveys the complete terms of the purchase offer. *Id.* Instead, the court ruled that the right of first refusal terminates if, after receiving reasonable notice of a proposed offer, the right-holder does not seek to clarify unclear terms and does nothing to exercise his right of first refusal. *Id.*

■ Dyrdal does not dispute that he received a copy of the purchase agreement on August 21, 2001. Like the right-holder in *Comeaux*, however, Dyrdal did not seek to confirm his suspicion that Golden Nuggets and Micke Pokel Farms had negotiated terms not reflected in the purchase agreement, even though he had an opportunity to do so during a telephone conversation with Baumert shortly after receiving the purchase agreement. Nor did he exercise his right of first refusal. Instead, Dyrdal brought the present action. If Dyrdal thought he needed additional information before deciding whether to exercise his right of first refusal—as he now claims—he could have asked Baumert about the specifics of Micke Pokel Farms's offer or advised him that he deemed the purchase agreement to be insufficient notice of the proposed sale, either because it was not signed or because it did not contain all of the terms and conditions of the sale. Having failed to do so, he cannot now complain that he lacked sufficient information to make an informed choice about whether to purchase the property.

## II

■ Although the lease does not require Golden Nuggets to ensure that the land can be farmed, Dyrdal argues that the district court erred in concluding that Golden Nuggets did not have a duty to repair the ditch walls and embankments on the land. Specifically, Dyrdal argues that, either through course of conduct or promissory estoppel, Golden Nuggets had an implied duty to repair.

■ The supreme court recently summarized the rules for determining the meaning of a contractual provision. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346–47 (Minn.2003). Under those rules, (a) whether a contractual provision is ambiguous is a legal question; (b) a contract provision is ambiguous if, based on its language alone, it is reasonably susceptible to more than one meaning; (c) if a contractual provision is ambiguous, determining what the ambiguous provision means is a factual question; and (d) if the contractual provision is not ambiguous, its language "must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." *Id.* (quoting *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn.1999) (footnotes omitted)); *see Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 502 (Minn.App.1999) (stating that when a contract is unambiguous, it is improper for courts to go beyond the clear language of the contract). Relying on *Fredrich v. Indep. Sch. Dist. No. 720*, 465 N.W.2d 692, 695 (Minn.App.1991), *review denied* (Minn. Apr. 29, 1991), Dyrdal, nevertheless, argues that even when a contract is unambiguous, courts must consider extrinsic evidence of the parties' intent if the contract is silent about a disputed issue. Dyrdal's reliance on *Fredrich* is misplaced, however, because in *Fredrich* the court initially determined that the parties' contract was ambiguous and then relied on extrinsic evidence only to resolve the ambiguity. *Id.* (stating that "[s]ince the contract is ambiguous, this court may look at extrinsic evidence to interpret the con-

tract").[1]

Dyrdal's reliance on *Am. Mach. & Tool Co. v. Strite–Anderson Mfg. Co.,* 353 N.W.2d 592, 597 (Minn.App.1984), *review denied* (Minn. Sept. 12, 1984), for the proposition that a finding of ambiguity is not a prerequisite for the admission of course-of-dealing evidence to determine the parties' intent is similarly misplaced. *American Machinery* is a case involving the Uniform Commercial Code (U.C.C.). The U.C.C. specifically allows course-of-dealing evidence to supplement contracts involving the sale of goods. Minn.Stat. § 336.2–202 (2002). But because Dyrdal's lease is not a contract that involves a sale of goods, it is not governed by the U.C.C., and *American Machinery* is inapposite.

Dyrdal's alternative claim that the lease is ambiguous because it is silent on whether Golden Nuggets had a duty to repair the ditch walls is directly contrary to the supreme court's decision in *Krueger v. Farrant,* 29 Minn. 385, 13 N.W. 158 (1882). In *Krueger,* the court held that in the absence of an express agreement to make repairs, the landlord did not have a duty to repair the roof on the leased premises. *Id.* at 389–90, 13 N.W. at 161. The court reasoned that when a lease contains no stipulation on the subject, "there is no implied covenant on the part of the landlord to make repairs, [nor any warranty] that the premises are or will prove to be suitable for the tenant's use or business." *Id.* at 387, 13 N.W. at 159. The court noted that because the tenant is the party most interested in understanding the risks he will assume, "[i]t is incumbent on [the tenant] to exercise proper care and precaution in the selection and leasing of tenements . . . and to require the proper stipulations in the contract for his protection." *Id.* at 388, 13 N.W. at 159–60.

Like the lease in *Krueger,* the lease in this case contained no stipulation about a duty to repair the ditch walls and embankments on the land. Dyrdal admits that excess rain or water is a risk that farmers run and that landlords are not usually responsible for this risk. If Dyrdal did not want to assume the risk of excess rain or water, it was incumbent on him to require Golden Nuggets to be responsible for ditch walls and embankments on the land. He did not do so, and he may not now go outside the unambiguous terms of a written lease to imply a duty for which the parties did not bargain.

### III

▇ Dyrdal argues that the district court erred in granting summary judgment in favor of Golden Nuggets on its claim that by recording the notice of lis pendens, Dyrdal interfered with its contractual relation with Micke Pokel Farms. Dyrdal specifically argues that he was justified as a matter of law in recording the notice of lis pendens because he had a legal interest in the land based on his first-refusal right.

▇ To prevail on a claim of tortious interference with contractual relations, a plaintiff must prove that (1) there is a contract, (2) the defendant knew about the contract, (3) the defendant intentional-

---

**1.** Dyrdal makes arguments based on unpublished opinions of this court. Unpublished opinions are of limited value in deciding an appeal. *See* Minn.Stat. § 480A.08, subd. 3(c) (2002) (stating "[u]npublished opinions of the court of appeals *are not precedential*") (emphasis added); *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800–01 (Minn.App.1993) (stating dangers of miscitation and unfairness associated with use of unpublished opinions and that while persuasive, "[t]he legislature has unequivocally provided that unpublished opinions are not precedential"). Additionally, we note that the unpublished authority Drydal cites is distinguishable.

ly procured a breach of the contract without justification, and (4) the plaintiff suffered injuries as a direct result of the breach. *Howard v. Minn. Timberwolves Basketball Ltd. P'ship,* 636 N.W.2d 551, 559 (Minn.App.2001) (citing *Bouten v. Richard Miller Homes, Inc.,* 321 N.W.2d 895, 900 (Minn.1982), *review denied* (Minn. Feb. 19, 2002)). A successful claim requires proof of all elements. *Bebo v. Delander,* 632 N.W.2d 732, 738 (Minn.App. 2001), *review denied* (Minn. Oct. 16, 2001). A person does not interfere with a contract when he "asserts in good faith a legally protected interest of his own believing that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." *Kjesbo v. Ricks,* 517 N.W.2d 585, 588 (Minn.1994) (quotation omitted).

The district court correctly concluded that Dyrdal interfered with Golden Nuggets's contractual relation with Micke Pokel Farms without justification. Dyrdal does not dispute that he received a copy of the purchase agreement between Golden Nuggets and Micke Pokel Farms. The district court found that the purchase agreement disclosed the complete details of the sale, and the court's finding was not clearly erroneous. By taking no action to exercise his right of first refusal or to verify his suspicion that the purchase agreement did not fully disclose the terms of Micke Pokel Farms's offer, Dyrdal allowed his right of first refusal to lapse and lost any interest in the land. The district court correctly concluded, therefore, that Dyrdal was not justified in recording the notice of lis pendens and that he interfered with Golden Nuggets's contract with Micke Pokel Farms by so doing.

Relying on *Howard,* Dyrdal argues that he was justified in recording the notice of lis pendens. In *Howard,* a photographer claimed that when the Minnesota Timberwolves basketball team enforced a National Basketball Association (NBA) rule prohibiting the issuance of credentials to photographers whose trading-card clients did not have a contract with the NBA, the Timberwolves tortiously interfered with his third-party contract to photograph team members for trading cards. 636 N.W.2d at 555. The court held that the actions of the Timberwolves were justified because the Timberwolves were asserting a legal right to exclude. *Id.* at 559. Unlike the Timberwolves, however, Dyrdal had no right to assert because he had allowed his interest in the property to lapse.

Dyrdal also claims that disputed issues of material fact remain as to whether Golden Nuggets disclosed all the terms of Micke Pokel Farm's offer. But whether the purchase agreement reflected all the terms and conditions of Micke Pokel Farms offer is immaterial, because by sending Dyrdal a copy of the purchase agreement, Golden Nuggets reasonably notified Dyrdal of the terms of the potential sale and triggered his right of first refusal and his duty to seek clarification of any unclear terms.

## IV

Both David Dyrdal and Gregory Dyrdal argue that the district court abused its discretion by awarding respondents bad-faith attorney fees. The Dyrdals contend that the award must be reversed because respondents failed to provide notice by a separate motion for sanctions, as required by Minn.Stat. § 549.211, subd. 4(a) (2002); *see also* Minn. R. Civ. P. 11.03 (requiring separate motion for sanction). Alternatively, they claim that they did not act in bad faith.

Section 549.211 allows a court to award attorney fees as a sanction when, after notice to the offending party and an oppor-

tunity to respond, the court determines that a claim, defense, or other legal contention has been presented for an improper purpose or is unwarranted by existing law. Minn.Stat. § 549.211, subds. 2, 3, 5 (2002). Whether to award attorney fees is a matter within the district court's broad discretion. *Kellar v. Von Holtum,* 605 N.W.2d 696, 702 (Minn.2000); *Hampton Bank v. River City Yachts, Inc.,* 528 N.W.2d 880, 890 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995). But Minn. Stat. § 549.211, subd. 3, specifically provides that the court may exercise its authority to impose sanctions "subject to the conditions in this section."

Minn.Stat. § 549.211, subd. 4(a), contains conditions for imposing a sanction. It states:

> A motion for sanctions under this section must be made separately from other motions or requests and describe the specific conduct alleged to violate subdivision 2. It must be served as provided under the Rules of Civil Procedure, but may not be filed with or presented to the court unless, within 21 days after service of the motion, or another period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.[2]

Under the plain language of the statute, the requirement that a motion for sanctions be made separately from other motions and requests is mandatory. *See* Minn.Stat. § 645.44, subd. 15a (2002) (" 'Must' is mandatory."). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning." *American Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). We, therefore, conclude that respondents' failure to file separate motions for sanctions did not satisfy the requirements of Minn.Stat. § 549.211, subd. 4(a), and the district court abused its discretion by imposing sanctions. *See Barrett v. Tallon,* 30 F.3d 1296, 1301 (10th Cir.1994) (abuse of discretion shown when district court's ruling based on erroneous view of law).

This conclusion is consistent with decisions interpreting Fed.R.Civ.P. 11, which is substantively identical to Minn. R. Civ. P. 11. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 391, 110 S.Ct. 2447, 2453, 110 L.Ed.2d 359 (1990) (interpreting rule 11 according to its plain meaning); *Johnson v. Waddell & Reed, Inc.,* 74 F.3d 147, 151–52 (7th Cir.1996) (vacating sanctions for failure to comply with separate-motion requirement); *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995) (recognizing that rule's plain language indicates that "safe harbor" provision is mandatory); *see also Gordon v. Unifund CCR Partners,* 345 F.3d 1028, 1028–29 (8th Cir.2003) (holding that motion for rule–11 sanctions was procedurally deficient where, instead of filing separate motion, counsel sent opposing party letter urging party to withdraw motion for default judgment and requested rule–11 sanctions in subsequent memorandum opposing motion for default judgment); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328–29 (2d Cir.1995) (reversing sanctions award where party failed to file request for sanctions separately from other requests); *VanDanacker v. Main Motors Sales, Co.,* 109 F.Supp.2d 1045, 1054–55 (D.Minn.2000) (rejecting

---

2. Minn.Stat. § 549.211, subd. 4(b), provides: "On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision 2 and directing an attorney, law firm, or party to show cause why it has not violated subdivision 2 with respect to that conduct." Respondents make no claim that the court entered an order under this subdivision.

**590**

rule–11 sanctions where defendants sent counsel warning letter of intent to seek sanctions but did not file separate motion). *But cf. Ridder v. City of Springfield,* 109 F.3d 288, 294 n. 7 (6th Cir.1997) (stating that separate-motion requirement "does not foreclose combining a Rule 11 request with other provisions regulating attorney behavior").

Respondents argue that because they substantially complied with the statute's procedural requirements, imposing sanctions is appropriate despite their failure to file a separate motion. Respondents note that they served their summary-judgment motions, which included the request for sanctions, 28 days before the hearing, thus giving the Dyrdals notice of the offensive conduct and more than 21 days to withdraw their claims, and the Dyrdals fully briefed the issue of sanctions and had an opportunity to be heard. But applying the doctrine of substantial compliance in this case would ignore the unambiguous, mandatory statutory requirement that a motion for sanctions be made separately from other motions or requests.

## DECISION

The district court did not err in granting summary judgment dismissing Dyrdal's claims that he was denied the opportunity to exercise his right of first refusal to buy Golden Nugget's land and his claim that Golden Nuggets breached an implied duty to repair. The district court did not err in granting summary judgment in favor of Golden Nuggets on its claim of interference with contractual relations. The district court abused its discretion by awarding respondents attorney fees as sanctions under Minn.Stat. § 549.211, subd. 2.

**Affirmed in part and reversed in part.**