Mary SWENSON, Respondent,

v.

Sharon L. BENDER, Appellant.

No. A08–576.

Court of Appeals of Minnesota.

April 28, 2009.

Mary Swenson, Ham Lake, MN, pro se respondent.

Nathan M. Hansen, North St. Paul, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; ROSS, Judge; and PORITSKY, Judge.*

## OPINION

ROSS, Judge.

This appeal concerns a Ph.D. candidate's claim that her faculty dissertation advisor stole her ideas and falsely accused her of plagiarism. We must decide whether the advisor's alleged theft and her reports that the candidate engaged in plagiarism support the candidate's action against the advisor for breach of fiduciary duty. Former "online university" instructor Sharon Bender appeals a district court judgment requiring her to pay her former dissertation advisee Mary Swenson $60,000 in damages for breach of fiduciary duty. Bender asserts that the district court improperly considered the fiduciary-duty claim and challenges the conclusion that she breached a fiduciary duty to Swenson. Bender also contends that the district court erred by considering Swenson's common-law conversion-of-intellectual-property claim, and she challenges the district court's interlocutory award of attorney fees. Because we conclude that Bender neither owed nor breached a fiduciary duty and because the district court exceeded its discretion when it awarded attorney fees, we reverse.

## FACTS

We are asked to address claims arising from counter-allegations of idea theft between a Capella University doctoral candidate and her academic advisor. Capella University offers academic degrees based on coursework completed by students on the Internet. Mary Swenson enrolled at Capella in January 2000 to obtain a Ph.D. in organizational psychology. Swenson followed Capella's guidelines and chose four faculty members in the fall of 2001 to constitute a committee to evaluate her doctoral dissertation. Swenson's chosen committee included a Capella faculty mentor to serve as chairperson, two faculty evaluators from Capella's school of psychology, and one independent reviewer. Swenson chose Sharon Bender, an adjunct instructor at Capella, to serve as the independent reviewer, and she retained Bender in that role even when she otherwise completely changed the committee's membership in January 2002.

The district court found and the record clearly establishes that Bender and Swenson collaborated extensively in Swenson's dissertation. Swenson testified that because she lacked a research background she depended on her dissertation committee for guidance. Ordinarily, the chairperson of the dissertation committee would fill that role, but in this case Swenson chose

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Bender. Swenson and Bender conducted their relationship entirely over the internet and telephone. Electronic mail indicates that Bender offered her own dissertation to Swenson as "a model" and substantially edited Swenson's draft dissertation.

Bender and Swenson mentioned entering into a business relationship in which the two would use the ideas they discussed, but the business relationship between the two never developed. No money, property, or other valuable interest changed hands, and Bender never obligated herself to act for Swenson's benefit in an economic capacity or in any role other than advisor. The district court found that "to a great extent" Swenson had developed her dissertation ideas before working with Bender. But it also found that Swenson wanted Bender to co-author a book elaborating on the ideas they had discussed; that Bender offered her own material to Swenson to incorporate into her dissertation; that Swenson asked Bender to help depict the ideas graphically; that Swenson drafted an outline of a book that she intended to author with Bender; and that the two also discussed publishing a jointly authored article.

Swenson submitted her dissertation to the committee, which accepted it for review contingent on her making revisions to it. Swenson reformed her dissertation committee again in 2003, and this time she removed Bender. Despite removing her, Swenson continued to rely on Bender for advice and editing. But their continued collaboration eventually led to disagreements about how to attribute credit for abstract theoretical concepts that they had discussed. The district court found that Swenson created a sole proprietorship and intended to teach, write about, and market the theories. It found that Bender included what appeared to be modified forms of the same theories on her academic website for use by Capella students.

The disagreements culminated in conflicting accusations to Capella University. After the review committee failed her dissertation, Swenson complained to Capella that Bender "sabotaged" her efforts to obtain a degree and that Bender stole her "intellectual property." Bender responded in kind, accusing Swenson of plagiarism in her dissertation.

Capella's academic standards committee investigated the accusations. It rejected Swenson's allegation of sabotage. Capella took no clear position on the competing claims of plagiarism, deeming the contest to be "better left to the legal process." But it concluded that Bender acted unethically in her student-advisor role by developing a personal relationship with Swenson, and it found it impossible to discern which parts of Swenson's dissertation were her own work and which were Bender's.

Swenson sued in district court, raising seven claims. She voluntarily dismissed all except a claim of conversion. Swenson immediately requested that the district court reinstate her claim of breach of fiduciary duty, and the court did so. Bender moved to modify the pretrial schedule. The district court denied Bender's motion and also awarded attorney fees to Swenson for having to respond to it.

The district court conducted a bench trial on the surviving claims of conversion of intellectual property and breach of fiduciary duty. It concluded that Swenson failed to prove conversion, but it determined that Swenson and Bender were in a fiduciary relationship and found that Bender had breached her fiduciary duty. Bender appeals.

## ISSUES

I. Does the record support the district court's conclusion that Bender

breached a fiduciary duty arising from the advisor-student relationship?

II. Did the district court abuse its discretion by awarding attorney fees to Swenson?

III. Should this court disregard its prior determination of mootness and decide whether the district court erroneously recognized a common-law conversion-of-intellectual-property claim?

## ANALYSIS

Bender challenges three of the district court's decisions. The first regards its assessment of the fiduciary duty claim. The next concerns the district court's decision to award Swenson attorney fees. And the remaining decision regards Swenson's unsuccessful claim of conversion of intellectual property. Bender's first two challenges have substantial merit, and we have already rejected the third in a special-term decision.

## I

Bender argues that the district court should not have revived Swenson's voluntarily dismissed claim of breach of fiduciary duty. She argues alternatively that the district court erred when it concluded that Bender owed a fiduciary duty to Swenson and that Bender breached that duty. Bender did not move for a new trial. When a party does not move for a new trial, on appeal we review only whether the evidence sustains the district court's findings of fact and whether the findings sustain the conclusions of law and judgment. *Rainforest Cafe, Inc. v. State of Wis. Inv. Bd.*, 677 N.W.2d 443, 450 (Minn. App.2004). A party may, however, without first seeking a new trial, obtain appellate review of a substantive legal question that the district court considered and decided. *Id.*

### The Reinstatement of the Fiduciary Duty Claim

The district court dismissed all but one claim before trial, according to the parties' stipulation. The next day, however, Swenson's attorney asked the district court not to sign the dismissal order. But the order had already taken effect, so Swenson's attorney asked the court to reinstate the claim of breach of fiduciary duty, representing that he had executed the stipulation in error and that his client never intended to dismiss that claim. The district court concluded that Bender would not be prejudiced and agreed to revive the claim. Bender challenges the district court's vacating of its dismissal order.

A district court may vacate or modify a dispositive order for good cause. Minn. R. Civ. P. 60.02. When deciding whether to revive a claim, the district court should consider whether good cause justifies revival, whether the claim is meritorious, whether the party seeking relief acted diligently, and whether the adverse party will suffer significant prejudice. *W. Lake Superior Sanitary Dist. v. Interpace Corp.*, 454 N.W.2d 449, 452 (Minn.App. 1990). The district court considered these factors when it modified its order and reinstated the fiduciary duty claim.

Bender asserts that we should reverse because Swenson's attorney falsely represented that his stipulation was based on a mistake. The attorney had represented to the district court that stipulating to dismiss the fiduciary duty claim "was [his] mistake," asserting, "I take full responsibility for it. My client did not authorize me to do it and I made the mistake." Bender contends that the stipulation reflected Swenson's true wishes, but she cites no evidence in support. She merely

points to the correspondence between the attorneys about the stipulation, which does not facially conflict with Swenson's attorney's explanation that he acted mistakenly without his client's consent regarding one of the claims. Bender has failed to establish falsity.

Bender also fails to establish that the decision to revive the breach-of-fiduciary-duty claim unduly prejudiced her. She claims that the dismissal and revival prevented her from bringing motions challenging the claim. But the claim lived for more than two years from suit until it was dismissed soon before the time set for trial, and Swenson objected before the claim had been dead a full day. The district court reasoned appropriately that Bender had ample opportunity to bring dispositive motions before the dismissal. It weighed the relevant factors and reasonably concluded that Bender was not prejudiced. Seeing no abuse of discretion, we will not disturb the district court's decision to reinstate the claim of breach of fiduciary duty.

### The Substance of the Fiduciary Duty Claim

The district court concluded that Bender breached a fiduciary duty owed to Swenson arising from their advisor-student relationship. Bender challenges this conclusion, arguing that there was no fiduciary relationship and that even if there were, she committed no breach. Her challenge is well founded.

 To prove that Bender breached a fiduciary obligation, Swenson had to establish that the two were in a fiduciary relationship and that Bender breached a duty arising from that relationship. *See Midland National Bank of Minneapolis v. Perranoski,* 299 N.W.2d 404, 413 (Minn. 1980) (requiring fiduciary relationship and breach). The existence of a fiduciary relationship is generally a question of fact.

*Carlson v. SALA Architects, Inc.,* 732 N.W.2d 324, 331 (Minn.App.2007), *review denied* (Minn. Aug. 21, 2007). Fiduciary relationships arise when one person trusts and confides in another who has superior knowledge and authority. *Id.* at 330. A court may find the necessary relationship in light of "moral, social, domestic, or merely personal" factors. *Kennedy v. Flo–Tronics, Inc.,* 274 Minn. 327, 331, 143 N.W.2d 827, 830 (1966) (quotation omitted).

 We first consider whether the facts can support the finding that a fiduciary relationship existed between Bender and Swenson. A "fiduciary" is "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship." Black's Law Dictionary 658 (8th ed.2004). The duty imposed on fiduciaries is "the highest standard of duty implied by law." *D.A.B. v. Brown,* 570 N.W.2d 168, 172 (Minn.App. 1997); *see also Prince v. Sonnesyn,* 222 Minn. 528, 535, 25 N.W.2d 468, 472 (1946) (describing partners' duties as fiduciaries). Minnesota caselaw recognizes two categories of fiduciary relationship: relationships of a fiduciary nature per se, and relationships in which circumstances establish a de facto fiduciary obligation. *Carlson,* 732 N.W.2d at 331.

No per se relationship existed here. Per se fiduciary relationships include trustee-beneficiary, attorney-client, business partnerships, director-corporation, officer-corporation, and husband-wife. *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.,* 756 N.W.2d 907, 914 (Minn. App.2008) (listing relationships), *review denied* (Minn. Jan. 20, 2009); *State v. Probate Court,* 129 Minn. 442, 446, 152 N.W. 845, 846 (1915). The district court did not clearly reject the notion that the advisor-student relationship does not constitute a

fiduciary relationship per se. It accurately observed that no Minnesota appellate court has held the advisor-student relationship to be of a fiduciary nature as a matter of law. But it went on to find that a fiduciary relationship existed in this case based on three factors that are common in virtually every Ph.D. candidate's dissertation development-and-review process. The district court's stated factors are (1) "Courts have recognized that the relationship between students and [teachers] is built on a professional relationship of trust and deference"; (2) "Bender's sole function [on the committee] was to assist Swenson with her thesis"; and (3) "Swenson relied heavily on Bender's knowledge and authority in refining her ... thesis, reforming her doctoral committee, and in performing her research and writing."

In basing its determination on those factors, the district court effectively concluded that dissertation reviews generally include a fiduciary relationship. We observe that Ph.D. candidates will commonly have at least one reviewing committee member who serves as mentor and guide in relatively the same fashion as the district court describes the "uniquely close" Bender–Swenson relationship. We therefore disagree with the district court's implicit reasoning and expressly hold that the advisor-student relationship in the dissertation process is not a fiduciary relationship per se. The relationship includes none of the pecuniary obligations found in those trust relationships traditionally recognized to be fiduciary per se. We next examine whether the facts presented at trial and viewed in Swenson's favor support a finding of a de facto fiduciary relationship.

 The trial testimony regarding the relationship also does not demonstrate that Bender undertook a fiduciary obligation regarding Swenson. The supreme court has concluded that a fiduciary relationship cannot arise even out of a long, close, and trusting relationship when the purportedly trusting party "should have known the [other party] was representing adverse interests." Given Bender's roles as adjunct instructor at Capella and as member of the committee assigned to assess Swenson's academic paper, Swenson should have known that Bender had an independent obligation to Capella that at least paralleled, if not superseded, her obligation to Swenson as it regards the dissertation's subject matter. Bender's role prevented her from being bound to act only for Swenson's benefit on all matters.

Several factors bear this out. It is undisputed that Capella faculty are obligated to report plagiarism. Separately, as an independent reviewer of Swenson's dissertation, Bender testified without contradiction that she also had a duty to evaluate the quality of Swenson's academic performance as reflected in her dissertation. The scope and character of Bender and Swenson's relationship cannot be defined without incorporating Bender's independent and competing obligations to the university. So considered, the advisor-student relationship between Bender and Swenson is neither unique nor one in which Swenson, as student, could have reasonably assumed confidentiality in her discussions of her dissertation concepts with Bender.

As faculty member, Bender had a duty to advance the school's academic standards regarding plagiarism and excessive collaboration, and to report suspected violations of those standards. This defeats Swenson's claim that Bender was her fiduciary. *See Stark v. Equitable Life Assur. Soc.*, 205 Minn. 138, 145, 285 N.W. 466, 470 (1939) (explaining that the ordinary relationship between insured and insurance agent is not fiduciary because the insured "should know that the insurance

agent was representing adverse interests"); *S. Minn. Mun. Power Agency v. City of St. Peter,* 433 N.W.2d 463, 468 (Minn.App.1988) (affirming trial court's finding of no fiduciary relationship because "testimony clearly reveals that [plaintiff] knew [defendant's] interests were not, and could not be, identical to its own"). Except for the apparently substantial collaboration of ideas and undeveloped discussions about a *potential* future partnership, the aspects of the advisor-student relationship between Bender and Swenson appear to be common in the academic setting. The features that would tend to build a trusting relationship during a dissertation process are not unusual in this case. Again, if a fiduciary obligation existed between Bender and Swenson, all disaffected Ph.D. candidates could claim a per se fiduciary relationship with their dissertation advisors and evaluators, stretching the cause of action beyond its currently recognized limits. We hold that the facts cannot support the finding that the relationship between Bender and Swenson created a fiduciary obligation.

■ Having concluded that Bender and Swenson were not in a fiduciary relationship, there could be no breach of fiduciary duty. But the evidence also does not support the conclusion that Bender failed to satisfy any purported fiduciary obligation. A fiduciary must act with "the utmost fidelity" to the party holding her in confidence. *Christensen v. Redman,* 243 Minn. 130, 136, 66 N.W.2d 790, 794 (1954). A fiduciary is prohibited from self-dealing in violation of the trust placed in her. *Id.* (quotation omitted). The duties arising from a fiduciary relationship are often described as duties of care, good faith, and candor. *Potter v. Pohlad,* 560 N.W.2d 389, 392 (Minn.App.1997), *review denied* (Minn. Jun. 11, 1997).

The district court did not identify exactly how Bender breached a fiduciary duty, but Swenson had claimed that Bender breached by stealing Swenson's ideas and accusing Swenson of plagiarism. The district court found that "Bender's accusations of plagiarism and breach of her fiduciary duty ... were a substantial factor in Capella's decision to require her to recomplete her degree," without explaining which of Bender's actions constituted the breach. But the district court expressly determined that Bender had *not* "converted" Swenson's ideas, finding both that Swenson failed to prove that any of her allegedly stolen ideas were new and that "Swenson has not established the value of her ideas at any point." These findings are unchallenged and very well founded. It is therefore impossible to conclude that Bender breached any duty by stealing Swenson's ideas.

■ This leaves Bender's accusation of plagiarism, which Swenson characterized as "sabotage." The district court appears to have concluded that Bender's accusation of plagiarism was the breach of her fiduciary duty. It expressed "astonish[ment] that Capella ... conclu[ded] that Bender did not sabotage Swenson's completion of her dissertation," and it awarded damages for breach of fiduciary duty exclusively to cover Swenson's costs associated with that noncompletion. For two reasons we reject the theory that Bender's report of plagiarism in Swenson's dissertation could constitute the breach, even if Bender and Swenson had been in a fiduciary relationship.

First, we reject the theory because it is essentially a weak substitute for the dismissed defamation claim. A line of cases reflects this court's reluctance to sustain a cause of action for breach of a de facto fiduciary duty when the cause of action merely disguises another, more apposite

but unavailing legal theory. *See, e.g.,* *Carlson,* 732 N.W.2d at 331 (suggesting that a fiduciary duty claim was really a breach of contract case); *D.A.B.,* 570 N.W.2d at 172 (explaining that breach of fiduciary duty claim more properly sounded in medical malpractice); *R.E.R. v. J.G.,* 552 N.W.2d 27, 29–30 (Minn.App.1996) (resolving breach of fiduciary duty claim that appeared to seek recovery for heart balm). To precisely address Swenson's allegation that Bender converted her intellectual property and inappropriately accused her of plagiarism, Swenson included a specific claim of conversion, which failed for lack of factual support, and a claim of defamation, which she voluntarily dismissed. Having failed to prove her complained-of harms on these more apposite causes of action, Swenson cannot disguise and combine her failed tort theories into an equitable theory that imposes "the highest standard of duty implied by law."

Second, according to Capella's academic standards committee, Bender's accusation of plagiarism had merit. The committee was so concerned about Swenson's collaborative approach that it made the following inculpatory finding:

> Throughout the email correspondence with Dr. Bender, Ms. Swenson evidenced a dependence on Dr. Bender's editing of her proposal and draft dissertation to the degree that it is questionable how much Ms. Swenson is primarily responsible for these documents. This issue occurred again when an outside editor revised the draft dissertation and significantly changed the text of several chapters. Ms. Swenson did not take immediate and sole responsibility for the edited dissertation and allowed it to be reviewed by her committee without identifying ownership for the text. Thus, it remains unclear how much of the current draft of her dissertation represents

her work and how much represents the work of Dr. Bender and other editors. More specifically, it determined that "Ms. Swenson has yet to demonstrate that she is capable of conducting doctoral dissertation research where she ... produces findings and conclusions that are solely her own work." So although Bender's accusation of plagiarism may have "sabotaged" Swenson's objective to obtain a favorable dissertation evaluation, it is the type of "sabotage" that is invited, not actionable, in the academic setting. *Cf. Ross v. Univ. of Minn.,* 439 N.W.2d 28, 35 (Minn.App. 1989) (explaining that faculty member's allegedly defamatory statement criticizing and disciplining student is conditionally privileged and not actionable without proof of actual malice), *review denied* (Minn. Jul. 12, 1989). Whatever duty Bender may have owed to Swenson, it was not the duty to withhold a merited report that Swenson's dissertation included the unattributed work of others.

## II

■■■ Bender argues that the district court should not have awarded Swenson attorney fees when it rejected Bender's request to modify the trial schedule. An award of attorney fees must be authorized by statute or contract. *City of Savage v. Formanek,* 459 N.W.2d 173, 177 (Minn. App.1990), *review denied* (Minn. Oct. 25, 1990). This court reviews attorney fee awards for an abuse of discretion. *Id.*

The district court did not indicate the authority it was relying on for its award of attorney fees. Swenson appears to assert that Minnesota Statutes section 549.21 authorizes the award. That statute was repealed in 1997 and replaced with section 549.211 (2008), which does not support the award. The new version of the statute permits attorney fees only as a sanction, and only after notice and an opportunity to respond. *Id.* The statute requires a par-

ty's motion for sanctions to be brought separately from all other requests and to describe the conduct that merits sanctions. *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 589 (Minn.App.2003). Alternatively, a district court may grant an award sua sponte as a sanction if it describes the conduct meriting the award. *Id.*

Swenson made no separate motion for sanctions. She requested the attorney-fee award in a memorandum opposing Bender's motion to revise the trial schedule. The district court awarded attorney fees without explaining what conduct justified it. The district court therefore acted beyond its discretion by awarding attorney fees, and we reverse the award.

### III

[redacted] Despite prevailing on the merits of Swenson's conversion claim, Bender argues that the district court should not have considered Swenson's claim that Bender converted her intellectual property, asserting that this cause of action is preempted by federal law. The district court addressed the claim substantively, concluding that Swenson had not proven the necessary elements of conversion. Bender nevertheless wants us to decide the matter instead on the jurisdictional ground of preemption. By order of the special term panel, however, this court already determined that the issue is moot by virtue of the district court's judgment against Swenson on the merits of this claim. The mootness doctrine requires this court to consider only "actual controversies" and to avoid issuing advisory opinions. *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999); *N. States Power Co. v. City of Sunfish Lake,* 659 N.W.2d 271, 274 (Minn.App.2003), *review denied* (Minn. Jun. 25, 2003). An issue is not moot if (1) it is capable of repetition while avoiding review or (2) there will be collateral consequences of the underlying judgment. *McCaskill,* 603 N.W.2d at 328. Despite this court's early order determining mootness, Bender argues again on brief that the district court's consideration of a common-law claim for conversion of intellectual property is capable of repetition while avoiding review. She argues again that the issue is *not* moot. We will not revisit the issue decided in our May 6, 2008, order. *See* Minn. R. Civ.App. P. 140.01 ("No petition for rehearing shall be allowed in the Court of Appeals.").

### DECISION

Because the facts presented at trial support neither the finding that a fiduciary relationship existed between Bender and Swenson nor the conclusion that a breach of duty occurred, we reverse the district court's conclusion that Bender breached a fiduciary duty to Swenson. Because the award of attorney fees was beyond the district court's discretion, we reverse the award.

**Reversed.**