*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0528**

David Herzog, et al.,
Appellants,

vs.

Cottingham & Butler Insurance Services, Inc.,
Respondent.

**Filed January 12, 2015
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CV-13-1502

John R. Neve, Evan H. Weiner, Neve Webb, PLLC, Minneapolis, Minnesota (for appellants)

Kelly A. Putney, Janine M. Loetscher, Bassford Remele, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellants challenge summary judgment, arguing that genuine fact issues preclude dismissal of their claims of breach of fiduciary duty, negligence, and violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1 (2014). We affirm.

**FACTS**

Appellant Grounded Air, Inc. is a Minnesota corporation in the business of surface freight transportation. Appellant David Herzog is the president of Grounded Air; he has operated the company since 1996 and has been its sole owner since 2000.

In 2005, Grounded Air transferred all of its insurance business to respondent Cottingham & Butler Insurance Services, Inc. (Cottingham), an insurance broker. Agent Christopher Vogel was Grounded Air's primary contact person at Cottingham. In addition to obtaining insurance for Grounded Air, Cottingham prepared certificates of insurance that Grounded Air provided to its clients.

Within months of transferring to Cottingham, Grounded Air became concerned about the price of workers' compensation insurance. Grounded Air's vice president, Nicolas Ehret, discussed alternatives with Vogel. Vogel suggested that Grounded Air use a professional employer's organization (PEO), which hires employees and leases them to the client company while maintaining responsibility for the administrative tasks of employment, including obtaining workers' compensation coverage. Vogel indicated that some of his other clients had worked with the PEO PaySource, Inc., and facilitated communication between PaySource and Grounded Air.

PaySource and Grounded Air executed a client service agreement, effective September 1, 2006, under which PaySource agreed, among other things, to obtain workers' compensation insurance coverage for Grounded Air. Effective that same date, Grounded Air canceled the workers' compensation insurance policy it previously obtained through Cottingham. Grounded Air continued to place the rest of its insurance

2

through Cottingham. Cottingham received a "commission" or "referral" payment when Grounded Air contracted with PaySource.

Shortly thereafter, Ehret contacted Cottingham about the need to include information about Grounded Air's new workers' compensation policy on its insurance certificates. Ehret wrote:

> As you know, as of Sept. 1st we have shifted our employees to a PEO (PaySource) in order to lower our costs by getting out of the pool. [Vogel] was able to pull this together for us . . . . I need to get our new work comp information added onto our certificate of liability insurance.
>
> I'm not sure if you need me to contact PaySource to get the insurance info or if you would like to contact them directly.

Ehret provided Cottingham with contact information to obtain the policy details from PaySource.

Vogel requested a copy of Grounded Air's workers' compensation insurance policy from PaySource. On September 27, a PaySource representative replied:

> Per our discussion earlier, I am authorizing Cottingham & Butler to issue Certificates of Insurance on behalf of PaySource Inc. for Grounded Air Inc. Our policy information is as follows:
>
> MN Workers Compensation Assigned Risk Plan
> Policy # WC-22-04-177879-00
>
> Policy Limits: Bodily Injury by Accident   $100,000 each accident
>                      Bodily Injury by Disease    $500,000 policy limit
>                      Bodily Injury by Disease     $100,000 each employee

Vogel did not independently verify the information PaySource provided and listed it on the insurance certificates. In fact, the policy PaySource identified did not cover Grounded Air.

In April and October 2007, two of Grounded Air's employees were injured on the job. Because Grounded Air did not have a workers' compensation insurance policy in place at the time of the injuries, the employees received payments from the Minnesota Special Compensation Fund (SCF). The SCF subsequently sued and obtained judgment against both Herzog and Grounded Air for the disbursed funds and statutory penalties of 65% for failure to maintain workers' compensation insurance. *See Drier v. Grounded Air. Inc.*, 837 N.W.2d 458 (Minn. 2013); *Mironenko v. Grounded Air Inc.*, 837 N.W.2d 458 (Minn. 2013).

Grounded Air and Herzog (collectively Grounded Air) initiated this action, alleging breach of fiduciary duty, breach of contract, negligence, fraud/intentional misrepresentation, and violation of the consumer fraud act. Cottingham moved for summary judgment on all claims. The district court granted Cottingham's motion, determining that Cottingham did not owe Grounded Air a heightened duty, did not breach its limited duty to follow Grounded Air's instructions, and did not violate the consumer fraud act. Grounded Air appeals.

## DECISION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a

4

matter of law." Minn. R. Civ. P. 56.03. The moving party "is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). On appeal from summary judgment, we must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). We review the evidence de novo, in a light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

Grounded Air challenges the district court's summary dismissal of its breach-of-fiduciary-duty and negligence claims, arguing that the district court erred in determining duty, breach, and causation as a matter of law. Grounded Air also challenges the dismissal of its consumer-fraud claim.[1] We address each of these issues in turn.

## I.  Grounded Air's breach-of-fiduciary-duty claim fails as a matter of law because Cottingham did not owe Grounded Air a heightened duty.

To recover for breach of fiduciary duty, a claimant must establish that a fiduciary relationship existed and that the fiduciary breached a duty arising from that relationship, causing damages. *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. App. 2009), *review denied* (Minn. July 22, 2009). Whether a person owes a fiduciary duty to another often turns on the relationship between the two persons. *Thomas B. Olson & Assoc. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 2d 907, 914 (Minn. App. 2008), *review denied* (Minn. Jan. 20, 2009). Relationships that give rise to fiduciary duties transcend ordinary

---

[1] Grounded Air does not challenge the summary judgment dismissing its breach-of-contract and fraud/intentional misrepresentation claims.

business relationships and involve not only reliance on a professional but a certain degree of trust and a duty of good faith on the part of the fiduciary. *Id.*

An insurance agent's duty generally is limited to acting in good faith and following the insured's instructions. *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543 (Minn. 1989); *see also Louwagie v. State Farm Fire & Cas. Co.*, 397 N.W.2d 567, 569 (Minn. App. 1986), *review denied* (Minn. Feb. 13, 1987) (insurance agent has a duty to carry out the express requests of an insured). But a heightened or fiduciary duty may exist "if 'special circumstances' are present in the agency relationship." *Gabrielson*, 443 N.W.2d at 543. Such special circumstances include a "[d]isparity of business experience and invited confidence," *Murphy v. Country House, Inc.*, 307 Minn. 344, 352, 240 N.W.2d 507, 512 (1976); a long-standing insurance relationship, *Louwagie*, 397 N.W.2d at 571; and when "the insured asks the agent to examine the insured's exposure and advise the insured on the potential exposure," *Scottsdale Ins. Co. v. Transport Leasing/Contract, Inc.*, 671 N.W.2d 186, 196 (Minn. App. 2003), *review denied* (Minn. Sept. 24, 2003).

Grounded Air argues that Cottingham owed it a fiduciary duty because Cottingham functioned as its consultant and advisor, with far greater resources and insurance expertise than Grounded Air, and because Cottingham brokered its contract with PaySource. We are not persuaded.

First, this is not a situation involving disparate business experience. As the district court cogently observed, Grounded Air successfully managed its workers' compensation and other insurance needs for more than a decade before contracting with Cottingham.

6

Grounded Air stopped obtaining workers' compensation insurance through Cottingham after less than one year. And Grounded Air never sought advice from Cottingham regarding the adequacy of the workers' compensation insurance coverage PaySource was to obtain on Grounded Air's behalf.[2] These facts do not establish a special relationship based on inexperience or dependence on Grounded Air's part. *Cf. Murphy*, 307 Minn. at 352, 240 N.W.2d at 512.

Second, Cottingham's referral to PaySource does not create a special relationship. Grounded Air asked Vogel how to reduce the cost of workers' compensation insurance, and Vogel recommended that Grounded Air obtain the insurance through PaySource, a separate entity. Grounded Air did just that, making PaySource the sole source of insurance for its employees' work-related risks after September 1, 2006. The fact that Cottingham may have received some form of compensation from PaySource for referring Grounded Air to PaySource is irrelevant. Grounded Air does not allege that Cottingham violated any duties to Grounded Air or engaged in fraud in the referral process.

In sum, the facts relevant to the parties' relationship are undisputed. They demonstrate that Grounded Air only briefly relied on Cottingham to obtain workers' compensation insurance and terminated Cottingham's contractual obligation to do so on September 1, 2006. Because this record does not establish any basis for determining that

---

[2] Grounded Air notes Herzog's testimony that he trusted Cottingham to do its "due diligence to make sure the policy is correct." We need not decide whether the district court properly rejected this testimony as self-serving. Whatever Grounded Air's expectations were, it is undisputed that Grounded Air never *asked* Cottingham to confirm the existence of the workers' compensation insurance PaySource agreed to obtain.

7

Cottingham owed Grounded Air a heightened duty, Cottingham is entitled to summary judgment on Grounded Air's breach-of-fiduciary-duty claim.

**II.    Grounded Air's negligence claim fails as a matter of law because it presented no evidence that Cottingham breached its duty to follow Grounded Air's instructions.**

Cottingham agreed to obtain information from PaySource about Grounded Air's "new" workers' compensation insurance and to include the policy information on Grounded Air's insurance certificates. This agreement created a specific limited duty to perform that act in good faith. Grounded Air argues that Cottingham failed in even this limited duty because it listed the workers' compensation policy PaySource obtained on its own behalf on the insurance certificates. We disagree. The undisputed evidence indicates that Grounded Air asked Cottingham to "get our new work comp information added onto our certificate of liability insurance." Consistent with that direction, Cottingham contacted PaySource, asking for "a copy of the work comp policy" for various purposes, including preparation of the insurance certificates. PaySource responded by "authorizing" Cottingham to issue insurance certificates "on behalf of PaySource Inc. for Grounded Air" and indicated a policy number and coverage limits. Cottingham included this information in the insurance certificates as Grounded Air requested.

Grounded Air argues that its request created a duty to verify the existence and terms of the policy. Grounded Air points out that Cottingham had previously expressly declined to include information in insurance certificates for policies it obtained for Grounded Air until it had verified them, and that Minnesota law requires Cottingham to

8

get confirmation from the state before listing a Minnesota Assigned Risk Plan workers' compensation policy on an insurance certificate. We are not persuaded. Neither Cottingham's past practice regarding insurance policies that it obtained for Grounded Air, nor Cottingham's independent obligations to the state, provide a basis for concluding that Cottingham owed Grounded Air a duty to verify the coverage that PaySource contracted to obtain for Grounded Air.

Because Grounded Air failed to establish material facts showing that Cottingham breached its duty to Grounded Air,[3] we conclude that Grounded Air's negligence claim fails as a matter of law.[4]

---

[3] Grounded Air also challenges the district court's conclusion that it failed to show causation. Because the lack of evidence as to breach independently justifies summary judgment, *see Lubbers*, 539 N.W.2d at 401, we decline to address this challenge.

[4] Grounded Air argues that the district court erred in granting summary judgment because it "established a prima facie case of negligent misrepresentation." As Cottingham accurately points out, Grounded Air's amended complaint states claims of negligence and fraud/intentional misrepresentation, but not negligent misrepresentation. Grounded Air counters that its complaint "as a whole clearly shows that the negligence claim is based on [Cottingham]'s misrepresentations" and its memorandum opposing summary judgment referred to negligent misrepresentation. We disagree. Our careful review of both documents does not reveal any allegations or arguments consistent with negligent misrepresentation. *See Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012) (stating elements of negligent-misrepresentation claim). Most important, the district court determined that Grounded Air asserted a claim of negligence, and it is that claim that the district court addressed. Consequently, Grounded Air's negligent-misrepresentation argument is not properly before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that appellate review is limited to those issues presented to and ruled on by the district court).

**III.** **Grounded Air's consumer-fraud claim fails as a matter of law because Grounded Air did not demonstrate an actionable misrepresentation claim or that this litigation benefits the public.**

The consumer fraud act penalizes fraud or misrepresentation made "with the intent that others rely" on the false representation in purchasing "any merchandise." Minn. Stat. § 325F.69, subd. 1; *301 Clifton Place L.L.C. v. 301 Clifton Place Condo. Ass'n*, 783 N.W.2d 551, 563 (Minn. App. 2010). The act "applies only to those claimants who demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

In its thorough and well-reasoned decision, the district court concluded that Grounded Air's consumer-fraud claim fails because there is no evidence that Cottingham made a misrepresentation in connection with the sale of merchandise or that this action benefits the public. We agree. First, the only alleged misrepresentation is Cottingham's act of listing the workers' compensation insurance policy information it obtained from PaySource in Grounded Air's insurance certificates. Cottingham did not make this representation in connection with any sale to Grounded Air. Indeed, Grounded Air chose not to purchase workers' compensation insurance through Cottingham.

Second, the record contains no evidence that Grounded Air's claims benefit the public. A claim benefits the public when the defendant "misrepresented its program to the public at large." *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003). Conversely, a claim "has no public benefit" when it is redressing "a single one-on-one transaction" where the defendant made no attempt to reach the general public. *Ly*, 615 N.W.2d at 314. There is no evidence and no claim that Cottingham included

10

inaccurate information on insurance certificates it issued for any other clients. And a damages award would benefit only Grounded Air. Grounded Air argues that an award in its favor would benefit the public because it will reimburse the SCF with those funds. We are not persuaded. Grounded Air is obligated to reimburse the SCF regardless of the disposition of this action; permitting it to recover from Cottingham merely passes the financial consequences of Grounded Air's coverage lapse onto Cottingham. Such a result does not benefit the public.

On this record, we conclude that Cottingham is entitled to summary judgment dismissing Grounded Air's consumer-fraud claim.

**Affirmed.**